COURT OF APPEALS OF VIRGINIA

Present: Judges Baker, Coleman and Elder
Argued at Salem, Virginia


ABATECO SERVICES, INC.
                                               OPINION BY
v.          Record No. 0328-96-3      JUDGE SAM W. COLEMAN III
                                            NOVEMBER 19, 1996
THERON J. BELL,
 COMMISSIONER OF LABOR AND INDUSTRY


            FROM THE CIRCUIT COURT OF THE CITY OF STAUNTON
                   Rudolph Bumgardner, III, Judge

            R. Leonard Vance for appellant.

            John R. Butcher, Assistant Attorney General
            (James S. Gilmore, III, Attorney General, on
            brief), for appellee.


     Abateco Services, Inc. (Abateco), a licensed asbestos

removal contractor, appeals the trial court's order which upheld

four citations issued by the Department of Labor and Industry

(Department) and $9,665 in civil penalties assessed by the trial

court against Abateco for refusing to provide the Department

access to its records as required by Abateco's subcontract and by

various provisions of the Virginia Occupational Safety and Health

Standards.  Abateco contends that the citations were not valid

because it had revoked its contractual consent for the Department

to access its records and, therefore, it had no legal obligation

to produce the records without a warrant or court order.  After

revoking its consent, Abateco asserts that the Department, which

had the statutory and regulatory right to access the records,

would have been required to obtain a search warrant or subpoena

in order to lawfully access its records.  Therefore, Abateco argues, because the Department was required to obtain a warrant or subpoena for the records, it could not cite Abateco for exercising its constitutional right to require the Department to obtain a warrant in order to gain access to Abateco's private records.  Abateco also contends that the civil penalty of $9,665 as assessed by the trial court was excessive.

Initially, we decide the extent of Abateco's protected privacy interest in its records, irrespective of the Department's contention that it contractually waived whatever privacy right it had.  We must address this question because the Department contends that Abateco, as a highly regulated industry, has no expectation of privacy and regardless of the contractual waiver, no search warrant would have been required to lawfully access the records.

We hold that Abateco had a diminished expectation of privacy in the requested records, however, we further hold that it contractually waived whatever Fourth Amendment rights it possessed in the records.  Because Abateco could not unilaterally revoke its contractual waiver of Fourth Amendment rights without breaching the terms of the contract, the Department had the right to inspect the records without a search warrant, provided it could reasonably do so without breaching the peace.  Accordingly, because the Department was not required to obtain a warrant in order to obtain access to the records, the citations issued by

the Department were founded.  Furthermore, the penalty of $9,665 assessed by the trial court was reasonable and within the range provided for in Code § 40.1-49.4(A)(4)(a).  Therefore, we hold that the trial court did not err in upholding the citations and the penalty imposed by the trial court was not excessive.

## I.  FACTS

Abateco is an asbestos abatement contractor licensed in Virginia pursuant to Code § 54.1-503.  In November 1994, Abateco was working as a subcontractor removing insulation containing asbestos from the boiler and pipes at the Staunton Correctional Center, a facility owned and operated by the Virginia Department of Corrections.

The subcontract executed by Abateco incorporated several documents,[1] among them being the General Conditions, which provided:

> Section 3(d).  The provisions of all rules and regulations governing safety as adopted by the Safety Codes Commission . . . and as issued by the Department of Labor and Industry under Title 40.1 of the Code of Virginia shall apply to all work under this contract.  Inspectors from the Department of

---

[1]  The subcontract stated:

> The Contract Documents for this Subcontract consist of this Agreement and any Exhibits attached hereto, the Agreement between the Owner and Contractor dated as of August 22, 1994, [and] the Conditions of the Contract between the Owner and Contractor (General, Supplementary and other Conditions) . . . . These form the Subcontract, and are as fully a part of the Subcontract as if attached to this Agreement or repeated herein.

> Labor and Industry <u>shall be granted access to the Work for inspection without first obtaining a search warrant from the court</u>.
>
>      *   *   *   *   *   *   *
>
> Section 21. The Architect/Engineer, the Owner, the Owner's inspectors and other testing personnel, and inspectors from the Department of Labor and Industry <u>shall have access to the Work at all times</u>.

(Emphasis added).

Upon receiving notification pursuant to Code § 40.1-51.20 that Abateco was working at the Staunton Correctional Center, the commissioner assigned an industrial hygienist to conduct an unannounced inspection at the site under the authority of Code § 40.1-51.21. On November 10, 1994, the inspector visited the site and attempted to conduct an inspection. Abateco's site supervisor refused to allow an inspection without a search warrant despite the fact that the subcontract expressly stated that the Department, under the General Conditions of the Contract, would be granted access to the work without a warrant.

On November 16, 1994, the inspector returned to the site to attend a construction progress meeting with representatives of Abateco, the Department of Corrections, and the architects. During this meeting, Abateco's contract with the Commonwealth was discussed. At that time, Abateco's president acknowledged that the contract provided for warrantless access to the records, but he stated that Abateco would not voluntarily allow the inspector to conduct a search.

On November 22, 1994, a complaint from an employee working

- 4 -

at the Staunton Correctional Center prompted the commissioner to send the inspector back to the site under authority of Code § 40.1-51.2, which requires the commissioner to inspect employee complaints of hazardous conditions. Abateco's site supervisor again refused to allow the Department to conduct an inspection without a search warrant. At that time, the inspector asked to see certain records that Abateco was required to keep by the Department's regulations pertaining to asbestos removal. The requested records included those showing employee exposure to asbestos,[2] records of employee asbestos training,[3] employee medical records,[4] and written hazard communication program documents.[5]

Abateco's supervisor refused to make these records available without a search warrant. The inspector then called Abateco's president, who also refused to consent to an inspection of the records and of the workplace. The inspector advised Abateco that a refusal to provide the records would be considered a willful violation of the regulations, but Abateco continued to refuse to provide access to the records.

[2] Required by Virginia Occupational Safety and Health Standard § 1926.58(n)(5)(ii).

[3] Required by Virginia Occupational Safety and Health Standards § 1926.58(k)(4)(ii).

[4] Required by Virginia Occupational Safety and Health Standards §§ 1926.58(m) and (n).

[5] Required by Virginia Occupational Safety and Health Standards § 1926.59(e)(4).

As a result of Abateco's refusal, the commissioner issued four citations for willful failure to produce the records. In accordance with Code § 40.1-49.4(4)(A)(a), the commissioner proposed a civil penalty of $20,000. After a bench trial on the merits, the trial judge found Abateco guilty of four willful violations and assessed a penalty of $9,665, which consisted of $5,665 for the commissioner's costs and $1,000 for each citation.

Abateco appeals the trial court's decision and argues that, despite its contractual consent to warrantless searches by the Department of Labor and Industry, it had the right to withdraw its consent and to demand a warrant under the Fourth Amendment before allowing inspection of the requested records. Abateco contends that because it had an expectation of privacy in its records, those records were not subject to being searched except upon a showing of justifiable cause and with a warrant, subpoena, or injunction. Abateco also asserts that the contract did not create an irrevocable waiver of Fourth Amendment rights and that Abateco properly revoked the contractual waiver when the inspector asked to see the records.

## II.  EXPECTATION OF PRIVACY IN RECORDS

The Department contends, as the trial court held, that Abateco has no reasonable expectation of privacy in those records that it is required to maintain because it is involved in the removal and disposal of asbestos, an industry that is heavily regulated by statute and by regulation. Abateco's claim that the

- 6 -

citations were not valid because a warrant was required to lawfully search the records is predicated upon the premise that it has a reasonable expectation of privacy in those records as far as the Department is concerned.

In 1967, the United States Supreme Court ruled that the Fourth Amendment protects businesses from unreasonable warrantless searches and seizures by administrative agencies. See v. City of Seattle, 387 U.S. 541 (1967).

> As we explained in Camara [v. Municipal Court, 387 U.S. 523 (1967)], a search of private houses is presumptively unreasonable if conducted without a warrant. The businessman, like the occupant of a residence, has a constitutional right to go about his business free from unreasonable official entries upon his private commercial property. The businessman, too, has that right placed in jeopardy if the decision to enter and inspect for violation of regulatory laws can be made and enforced by the inspector in the field without official authority evidenced by a warrant.

Id. at 543. However, the Supreme Court also cautioned that business premises could be inspected in many more situations than private homes and that a case-by-case determination of reasonableness is necessary. Id. at 456.

Following the See decision, the Supreme Court recognized an exception to the warrant requirement for administrative searches of closely regulated businesses and industries. See Colonnade Catering Corp. v. United States, 397 U.S. 72 (1970) (liquor licensees); United States v. Biswell, 406 U.S. 311 (1972) (gun dealers); Donovan v. Dewey, 452 U.S. 594 (1981) (underground and

- 7 -

surface mine owners); <u>New York v. Burger</u>, 482 U.S. 691 (1986) (junkyard owners). Warrantless searches in these situations are reasonable because "[c]ertain industries have such a history of government oversight that no reasonable expectation of privacy could exist . . . . The clear import of our cases is that the closely regulated industry of the type involved in <u>Colonnade</u> [liquor industry] and <u>Biswell</u> [gun dealers] is the exception." <u>Marshall v. Barlow's, Inc.</u>, 436 U.S. 307, 312 (1978) (citation omitted). "When a dealer chooses to engage in [a] pervasively regulated business and to accept a federal license, he does so with the knowledge that his business records . . . will be subject to effective inspection." <u>Biswell</u>, 406 U.S. at 316.

Abateco claims that it had a reasonable expectation of privacy in the records requested by the commissioner's inspector and that a warrant was required based upon the rationale of <u>Marshall</u>. In <u>Marshall</u>, the Supreme Court struck down a provision of the Occupational Safety and Health Act which permitted inspectors to enter and inspect businesses without a warrant. The Court held that Barlow's electrical and plumbing installation business did not fall under the "closely regulated business" exception to the warrant requirement. <u>Id.</u> at 314-15. However, the Court also stated that "[t]he reasonableness of a warrantless search . . . will depend upon the specific enforcement needs and privacy guarantees of each statute." <u>Id.</u> at 321. It is that standard which controls our determination of whether the

Department's regulatory requirements that asbestos contractors provide access to certain records encroaches upon the contractor's protected privacy interests.

Asbestos removal is a highly regulated industry in Virginia. Code §§ 54.1-500 through -517 provide a rigid scheme of licensure for asbestos removal contractors. In addition to being governed by the general provisions of Title 40.1, which apply to all businesses regulated by the Department of Labor and Industry, asbestos removal contractors are bound by Chapters 3.2 and 3.3 of Title 40.1 which provide for notification requirements and adherence to the National Emissions Standards for Hazardous Air Pollutants. Asbestos removal and asbestos disposal present health and safety hazards to the public and in the workplace. Pursuant to the authority granted to the commissioner under Code §§ 40.1-6(3) and (7), regulations governing occupational exposure to asbestos and record-keeping requirements have been promulgated. Because asbestos removal is so highly regulated in Virginia, asbestos removal contractors have a diminished expectation of privacy in work areas and in the records they are required to maintain relating to asbestos removal and disposal.

Abateco urges us to find that it had a reasonable expectation of privacy in its records even though the Department's regulations required Abateco to prepare and maintain the records. Abateco relies on McLaughlin v. Kings Island, 849 F.2d 990 (6th Cir. 1988), and Brock v. Emerson Electric Co., 834

F.2d 994 (11th Cir. 1987), to support its position.  In both Kings Island and Brock, the courts found that OSHA could not inspect without a warrant certain logs or records of employees' injuries and illnesses which the statutes at issue required to be maintained.  The court in Kings Island stated, "[w]e conclude that even though the records in question are required by law to be kept, this does not remove any privacy expectation that the employer may have in the information."  Kings Island, 849 F.2d at 996.

The Department argues that the Fourth Circuit case of McLaughlin v. A.B. Chance Co., 842 F.2d 724 (4th Cir. 1988), addressed the identical issue and should control this case.  The controlling rationale in A.B. Chance recognized that the employer had a diminished expectation of privacy in the employee's injury and illness records that were required to be kept, but that the right to inspect those records involved a minimal intrusion.  Id. at 727.  Because of the statutory duty to keep the records, there was no additional burden imposed on the employer to compile information or to "dig out supporting information, this work has already been done."  Id.  The court limited its holding by saying "under our ruling, the compliance officer must be on the employer's premises as a result of an employee's health or safety complaint before he may require production of the [logs] without a warrant."  Id. at 728.

We find the Fourth Circuit's reasoning in A.B. Chance

persuasive. Because Abateco is required by law to maintain the records to which the inspector requested access, Abateco had a diminished expectation of privacy in the records. Both the Code and the regulations promulgated by the Department place asbestos removal contractors on notice that they are required to maintain these records and to provide the Department access to them. Therefore, Abateco had a diminished right to privacy in the records. Moreover, when the inspector requested access to the records he was on the site investigating an employee complaint.

Code § 40.1-6(7) empowers the commissioner to "require that accident, injury and occupational illness records and reports be kept at any place of employment and that such records and reports be made available to the commissioner or his duly authorized representatives upon request." The regulations pertaining to this type of record provide that they shall be made available to the commissioner upon request. See Va. Occupational Safety and Health Standards §§ 1926.58(n)(5)(ii), 1926.58(k)(4)(ii), 1926.59(e)(4).

We find that Abateco had a diminished expectation of privacy in those records that the inspector requested, for two reasons: first, Abateco is a licensee in a closely regulated business in the Commonwealth, which reduces its expectation of privacy; and second, Abateco was required by law to create and maintain the records. Having determined that Abateco has a diminished expectation of privacy in these records, the question remains

whether, absent a waiver of Fourth Amendment rights, a warrant is required.  We do not have to decide that question because Abateco contracted with the commissioner to provide access to the records upon request without requiring a warrant and Abateco cannot unilaterally withdraw that consent, which was a condition of its bargain to perform the asbestos removal.

### III.  CONTRACTUAL WAIVER OF RIGHT TO PRIVACY

Code § 40.1-49.8 gives the commissioner authority to inspect the workplace of employers "with the consent of the owner, operator or agent in charge of such workplace . . . or with an appropriate order or warrant . . . ."  Moreover, Abateco's contract expressly provides that the Department shall have access to Abateco's records without obtaining a warrant.  Abateco agrees that it initially voluntarily consented to warrantless inspections or searches.  But, Abateco argues that its consent to search was revocable at any time and was, in fact, revoked by the site supervisor and the president's refusal to allow the inspector to see the records.  Abateco contends that because its consent was withdrawn, the Department's attempted search of its records violated Code § 40.1-49.8.

It is well-settled that a knowing and voluntary consent to search obviates the need for a search warrant under the Fourth Amendment.  See Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973); Crosby v. Commonwealth, 6 Va. App. 193, 197, 367 S.E.2d 730, 733 (1988) (quoting Hairston v. Commonwealth, 216 Va. 387, 387, 219 S.E.2d 668, 669 (1975), cert. denied, 425 U.S. 937 (1976)).  More specifically, the right to require a search warrant may be waived by written contract.  See Zap v. United States, 328 U.S. 624 (1946) rev'd on other grounds, 330 U.S. 800 (1947).

In Zap, the petitioner contracted with the Navy Department

to conduct experimental work on airplane wings.  Id. at 626.  The petitioner's contract with the Navy provided that "the accounts and records of the contractor shall be open at all times to the Government and its representatives . . . ."  Id. at 627.  The Court stated:

> And when petitioner, in order to obtain the government's business, specifically agreed to permit inspection of his accounts and records, he voluntarily waived such claim to privacy which he otherwise might have had as respects business documents related to those contracts.

Id. at 628.  Where businesses or entities have contractually consented to inspections or searches of documents and worksites, courts have uniformly held such provisions to be valid waivers of the requirement for a warrant or subpoena under the Fourth Amendment.  See United States v. Brown, 763 F.2d 984 (8th Cir.), cert. denied, 474 U.S. 905 (1985) ("The government has a substantial interest in establishing methods by which it can effectively monitor compliance with the regulations . . . .  We see no constitutional infirmity in the government requiring a provider to agree to maintain records . . . and to permit periodic audits of those records as a condition for [contracting with the government]. . . ."); United States v. Jennings, 724 F.2d 436 (5th Cir.), cert. denied, 467 U.S. 1227 (1984); First Alabama Bank v. Donovan, 692 F.2d 714 (11th Cir. 1982); United States v. Griffin, 555 F.2d 1232 (5th Cir. 1977); Lanchester v. Pennsylvania State Horse Racing Comm'n, 325 A.2d 648 (Pa. 1974).

- 14 -

Although as a general proposition, consent to search granted at the scene may be revoked, withdrawn, or partially limited by the person who gives the consent, see Lawrence v. Commonwealth, 17 Va. App. 140, 435 S.E.2d 591 (1993); Grinton v. Commonwealth, 14 Va. App. 846, 419 S.E.2d 860 (1992); 79 C.J.S. Searches and Seizures § 126 (1995), we hold that such is not the case when the consent is given in a valid and binding bilateral contract.

Abateco contends, however, that contractual consent cannot create an irrevocable waiver of Fourth Amendment rights. In support of this argument, Abateco cites Tri-State Steel Constr., Inc. v. OSHRC, 26 F.3d 173 (D.C. Cir. 1994), and National Eng'g & Contracting Co. v. OSHRC, 45 F.3d 476 (D.C. Cir. 1995). However, neither case is sufficiently similar to the instant case to be persuasive. In Tri-State Steel, although the general contractor had contractually consented to searches, 26 F.3d at 176-77, the subcontractor had not, which is different from the situation in the instant case. Moreover, the subcontractors objected to searches made by OSHA of the common areas, which led OSHA to obtain warrants in order to search the areas that were under the exclusive control of the subcontractors. Id. In National Eng'g, the search was also conducted pursuant to a warrant. National Eng'g, 45 F.3d at 478. The holdings in these cases are not applicable to this case and do not support Abateco's argument that it could revoke its contractual waiver.

A party "cannot accept the benefits of the contract and then

assert he is entitled to be relieved of its obligations." Link Assoc. v. Jefferson Standard Life Ins. Co., 223 Va. 479, 489, 291 S.E.2d 212, 218 (1982) (quoting United States v. Idlewild Pharmacy, Inc., 308 F. Supp. 19, 23 (E.D. Va. 1969)); see also Manassas Park Dev. Co. v. Offutt, 203 Va. 382, 385, 124 S.E.2d 29, 31 (1962) ("Where one enters into a contract to perform certain acts, without any exceptions or qualifications, and receives from the party with whom he contracts a valuable consideration for his engagement, he must abide by the contract . . . ."). Revoking only part of a written contract places a party in breach of the contract unless the other party consents to the revocation. See Spence v. Northern Va. Doctors Hosp. Corp., 202 Va. 478, 483, 117 S.E.2d 657, 660 (1961). In this case, Abateco attempted to unilaterally rescind the terms of its contract with the Commonwealth by withdrawing its consent.

To accept Abateco's position would be to allow the company to accept the benefit of its bargain with the Commonwealth without having to abide by its obligation to the commissioner. Therefore, we hold that the trial court did not err in ruling that Abateco's attempt to withdraw its contractual consent was ineffective. Thus, because Abateco had contractually consented to access its records without requiring a warrant, the trial court did not err in upholding the Department's citations.

### IV. EXCESSIVE CIVIL PENALTY

Abateco argues that the civil penalty of $9,665 imposed by

the trial court was excessive because Abateco had reason to believe it was justified in requiring the Department to obtain a warrant before allowing its records to be inspected; therefore, its refusal was not willful.  We disagree.  The evidence before the trial court was sufficient to support its finding that Abateco willfully violated the terms of the contract and Code § 40.1-51.21.

In assessing penalties, Code § 40.1-49.4(A)(4)(a) requires consideration of the size of the employer's business, the gravity of the violation, the good faith of the employer, and the employer's history of previous violations.  The contract that Abateco entered into provided that it agree to submit to searches by the Department of Labor and Industry without the need for a search warrant.  Abateco acknowledged the contractual provision, but refused to comply with its contractual obligation and stated that it had no intention of complying.  Although the inspector acknowledged at trial that he told Abateco that he thought Abateco had the right to require a search warrant before being searched, he also testified that the commissioner's position was that a warrant was unnecessary under the contract.  On these facts, we hold that the trial court did not err in finding that Abateco's refusal to voluntarily provide the documents to the commission as required by the contract was a willful violation of the contract and Code § 40.1-51.21.

Code § 40.1-49.4(J) provides that an "employer who willfully

or repeatedly violates any safety or health provision of this title or any standard, rule or regulation promulgated pursuant thereto may be assessed a civil penalty of not more than $70,000 for each such violation."  In this case, the trial court assessed a penalty of $5,665 for the commissioner's costs in enforcing the contract and the statutes and $1,000 for each of the four willful violations.  The maximum allowable penalty for a willful violation is $70,000.  The assessment of the commissioner's costs and $1,000 penalty for each of the four willful violations is not excessive.

## V.  CODE § 40.1-51.21

Abateco contends that, because it had already been inspected by the Department earlier in 1994, the attempted inspection of the records and worksite at the Staunton Correctional Center in November 1994 was in violation of Code § 40.1-51.21.  This section states:

> At least once a year, during an actual asbestos project, the Department of Labor and Industry shall conduct an on-site unannounced inspection of each licensed asbestos contractor's and RFS contractor's procedures in regard to installing, removing and encapsulating asbestos.  The Commissioner or an authorized representative shall have the power and authority to enter at reasonable times upon any property for this purpose.

Abateco urges this Court to interpret the language of the statute to mean that each licensed asbestos contractor should be inspected only once per year.  The argument is not persuasive.

When a statute is plain and unambiguous on its face, a court

may look only to the words of the statute to determine its meaning. Brown v. Lukhard, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985). "An ambiguity exists when the language is difficult to comprehend, is of doubtful import, or lacks clearness and definiteness." Id. The language of Code § 40.1-51.21 contains no ambiguity. It states that inspections of licensed asbestos contractors must take place "[a]t least once a year." The statute contains no words of limitation indicating that only one inspection per year is allowed. The plain meaning of the statute is that the Department of Labor and Industry must inspect once per year, but can inspect more than once per year.

Because the subcontract allowed the commissioner to make a warrantless search of the workplace and records, and because that consent was not effectively revoked, the trial court did not err in assessing penalty fines against Abateco for the four willful violation citations issued by the commissioner. The penalty assessed was not excessive. Accordingly, we affirm the decision of the trial court.

Affirmed.