Tuesday        19th

June, 2001.

Department of Professional and
 Occupational Regulation, Board for
 Asbestos and Lead,                                    Appellant,

 against     Record No. 1719-99-2
                  Circuit Court No. CL98-80

Abateco Services, Inc.,                               Appellee.

Abateco Services, Inc.,                               Appellant,

 against     Record No. 1780-99-2
                  Circuit Court No. CL98-80

Department of Professional and
 Occupational Regulation, Board for
 Asbestos and Lead,                                   Appellee.


Upon a Rehearing En Banc

Before Chief Judge Fitzpatrick, Judges Benton, Willis, Elder,
       Bray, Annunziata, Frank, Humphreys and Clements

            John B. Purcell, Jr., Assistant Attorney
            General (Mark L. Earley, Attorney General;
            Richard B. Zorn, Senior Assistant Attorney
            General, on briefs), for Department of
            Professional and Occupational Regulation,
            Board for Asbestos and Lead.

            Joseph W. Kaestner (Kaestner, Pitney & Jones,
            on briefs), for Abateco Services, Inc.


        By published opinion dated September 26, 2000, a

divided panel of this Court reversed and remanded the decision of

the trial court as to Record Number 1719-99-2, and affirmed the

decision of the trial court as to Record Number 1780-99-2.

Department of Professional and Occupational Regulation, Board for

Asbestos and Lead v. Abateco Services, Inc. and Abateco Services,

Inc. v. Department of Professional and Occupational Regulation,

Board for Asbestos and Lead, 33 Va. App. 473, 534 S.E.2d 352 (2000). We stayed the mandates of that decision and granted rehearing en banc.

Upon rehearing en banc, it is ordered that the stay of the September 26, 2000 mandates is lifted, and the judgment of the trial court is reversed and remanded as to Record Number 1719-99-2 and affirmed as to Record Number 1780-99-2 for the reasons set forth in the majority panel opinion.

Judges Benton and Annunziata dissent for the reasons set forth in the panel dissent. See id. at 484-94, 534 S.E.2d at 358-63.

This order shall be published and certified to the trial court.

A Copy,

Teste:

Clerk

                                    Tuesday        5th

        December, 2000.


Department of Professional and
 Occupational Regulation, Board for
 Asbestos and Lead,                                    Appellant,

  against      Record No. 1719-99-2
               Circuit Court No. CL98-80

Abateco Services, Inc.,                                Appellee.


Abateco Services, Inc.,                                Appellant,

  against      Record No. 1780-99-2
               Circuit Court No. CL98-90

Virginia Department of Professional and
 Occupational Regulation, Board for
 Asbestos and Lead,                                    Appellee.

                Upon a Petition for Rehearing En Banc

    Before Chief Judge Fitzpatrick, Judges Benton, Coleman, Willis,
       Elder, Bray, Annunziata, Bumgardner, Frank, Humphreys and
                              Clements


        On October 10, 2000 came Abateco Services, Inc., by

counsel, and filed a petition praying that the Court set aside

the judgment rendered herein on September 26, 2000, and grant a

rehearing en banc thereof.

        On consideration whereof, the petition for rehearing

en banc is granted, the mandate entered herein on September 26,

2000 is stayed pending the decision of the Court en banc, and

the appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35. Abateco Services, Inc. shall attach as an addendum to the opening brief upon rehearing en banc a copy of the opinion previously rendered by the Court in this matter. It is further ordered that Abateco Services, Inc. shall file with the clerk of this Court twelve additional copies of the appendix previously filed in this case.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

Present:  Judges Benton, Coleman and Humphreys
Argued at Richmond, Virginia


DEPARTMENT OF PROFESSIONAL
 AND OCCUPATIONAL REGULATION,
 BOARD FOR ASBESTOS AND LEAD

v.    Record No. 1719-99-2

ABATECO SERVICES, INC.                              OPINION BY
                                          JUDGE ROBERT J. HUMPHREYS
ABATECO SERVICES, INC.                       SEPTEMBER 26, 2000

v.    Record No. 1780-99-2

DEPARTMENT OF PROFESSIONAL
 AND OCCUPATIONAL REGULATION,
 BOARD FOR ASBESTOS AND LEAD


            FROM THE CIRCUIT COURT OF THE CITY OF HOPEWELL
                    Robert G. O'Hara, Jr., Judge

            Brian J. Goodman, Assistant Attorney General
            (Mark L. Earley, Attorney General; Richard B.
            Zorn, Senior Assistant Attorney General;
            John B. Purcell, Jr., Assistant Attorney
            General, on briefs), for Department of
            Professional and Occupational Regulation,
            Board for Asbestos and Lead.

            Joseph W. Kaestner (Brian R. Pitney;
            Kaestner, Pitney & Jones, on briefs), for
            Abateco Services, Inc.


     The Board for Asbestos and Lead of the Department of

Professional and Occupational Regulation (the "Board") appeals

from a decision of the Circuit Court of the City of Hopewell

reversing the Board's decision to impose a fine on Abateco

Services, Inc. ("Abateco") for refusing to provide the

Department of Labor and Industry (the "Department") access to its records.  The Board contends the trial court erred in finding that:  (1) Abateco did not violate an existing state or federal standard regarding asbestos removal; (2) a state or federal standard did not exist at the time of the violation; (3) Abateco acted in good faith and, therefore, any violation was not willful; and (4) the fine imposed by the Board violated the Excessive Fines clauses of both the United States and Virginia Constitutions.  In addition, Abateco appeals the trial court's denial of its request for attorneys' fees.  We consolidated these appeals and, for the reasons that follow, we affirm in part and reverse in part and remand.

## I.  BACKGROUND

In November, 1994 Abateco was under contract to remove insulation containing asbestos from the Staunton Correctional Center, a facility owned and operated by the Virginia Department of Corrections.  The contractual arrangement between Abateco and the Commonwealth required Abateco to keep certain records regarding asbestos removal and to produce the records on demand by state regulators.  In addition to the contractual arrangement, various regulations adopted by the Department required that these records be maintained and produced upon demand.[1]

---

[1] Virginia Occupational Safety and Health Standards §§ 1926.58(k)(4)(ii), 1926.58(m), 1926.58(n)(5)(ii),

On November 22, 1994, an inspector from the Department requested certain records from Abateco, including employee medical records, employee asbestos training, employee exposure to asbestos, and a hazard communications document. After consulting with its counsel, Abateco refused to produce the documents in the absence of a search warrant, citing its privacy rights under the Fourth Amendment.

As a result of its refusal to provide the requested records, the Commissioner of the Department issued a citation and notification of penalty to Abateco, proposing a civil penalty totaling $20,000. Abateco appealed the penalty assessment to the Circuit Court of the City of Staunton. The trial court found Abateco guilty of four willful violations of the health and safety standards, and it assessed a total penalty of $9,665. We affirmed that decision in Abateco Services, Inc. v. Bell, 23 Va. App. 504, 477 S.E.2d 795 (1996).

Following our decision, the Board notified Abateco that its failure to meet applicable state or federal standards when performing an asbestos project also constituted grounds for additional disciplinary action by the Board pursuant to Code § 54.1-516(A)(3) and Asbestos Licensing Program Regulation 13.6.A.1. See 18 VAC 15-20-450. The matter was referred for an

---

1926.58(n)(5)(iii), 1926.59(e)(4). See 16 VAC 25-175-1926 (adopting the federal Occupational Safety and Health Act ("OSHA") standards and regulations).

informal conference pursuant to Code § 9-6.14:11.  In his proposed findings of fact, the hearing officer found that Abateco acted in good faith reliance on the advice of counsel in refusing to provide the records.  The hearing officer further found no federal or state standard relating to Abateco's right to demand a search or inspection warrant at the time of the violations.

The Board adopted the facts in the hearing officer's report, but found clear and convincing evidence that Abateco had failed to meet applicable state standards and had willfully violated Code § 54.1-516(A)(3).  The Board also found Abateco failed to meet state standards in violation of Asbestos Licensing Program Regulation 13.6.A.1.  See 18 VAC 15-20-450. The Board imposed a sixty-day inoperative suspension of Abateco's license and a $2,000 fine.

Abateco appealed the Board's decision to the Circuit Court of the City of Hopewell, pursuant to the Virginia Administrative Process Act.[2]  Abateco also requested an award of its attorneys' fees.  By letter opinion, the trial court reversed the Board's judgment and vacated the suspension and fine.  The trial court also denied Abateco's request for attorneys' fees.  These appeals followed.

---

[2] Code § 9-6.14:1 et seq.

## II.  VIOLATION OF AN EXISTING STATE STANDARD

Because the issues are interconnected, we consider together the Board's arguments that the trial court erred in reversing the Board's finding that Abateco violated an existing federal or state standard and that the trial court erred in finding that no federal or state standard existed.  Abateco successfully argued below that it did not violate any state or federal standard based on our previous holding that Abateco contractually consented to access to its records without the requirement of a warrant.  See Abateco, 23 Va. App. at 518, 477 S.E.2d at 801-02. Abateco contends this holding left open the issue of whether the records would have been available without a search warrant. Abateco does not dispute that the regulations promulgated by the Board existed on November 22, 1996, but contends the regulations were not enforceable unless and until we determined whether, absent a waiver, a search or inspection warrant was required pursuant to Code §§ 40.1-49.8 and 40.1-49.9.

We find this argument unpersuasive.  In reviewing an agency decision, the trial court must determine:  (1) whether the agency acted in accordance with law; (2) whether the agency made a procedural error which was not harmless error; and (3) whether the agency had sufficient evidential support for its findings of fact.  See Johnston-Willis v. Kenley, 6 Va. App. 231, 242, 369 S.E.2d 1, 7 (1988).

Whether a warrant is necessary is a legal, procedural issue, not a safety and health standard. The level of deference accorded to an agency decision depends upon the nature of the question involved. "[W]here the question involves an interpretation which is within the specialized competence of the agency and the agency has been entrusted with wide discretion by the General Assembly, the agency's decision is entitled to special weight in the courts." Id. at 244, 369 S.E.2d at 8. Heightened deference is not required where the issue is one in which the courts have a special competence. See id. at 243-44, 369 S.E.2d at 7-8. "Thus, where the legal issues require a determination by the reviewing court whether an agency has, for example, accorded constitutional rights, failed to comply with statutory authority, or failed to observe required procedures, less deference is required . . . ." Id. at 243, 369 S.E.2d at 7-8.

Based upon this standard of review, we find that a safety and health standard existed that required the production on demand of the required records. The issue of whether Abateco could interpose any protection under the Fourth Amendment to require a warrant is a legal issue, falling outside the specialized competence of the Board. Therefore, "little deference [wa]s required to be accorded the [Board's] decision" by the trial court. Id. at 246, 369 S.E.2d at 9.

However, the trial court was bound to apply our prior finding that Abateco contractually consented to produce the records on demand and without requiring a warrant. See Abateco, 23 Va. App. at 518, 477 S.E.2d at 801-02. Therefore, the trial court erred in reversing the Board's findings that standards existed requiring the production of certain records and that Abateco violated these standards.

### III.  GOOD FAITH AS NEGATING A WILLFUL VIOLATION

We previously affirmed a finding on these facts by the Circuit Court of the City of Staunton that Abateco's refusal to produce the records constituted a willful violation of Code § 40.1-51.21.  See Abateco, 23 Va. App. at 518, 477 S.E.2d at 802.  Nevertheless, Abateco argued, and the trial court agreed, that the hearing officer's finding that Abateco acted "in good faith reliance on the advice of counsel," when adopted by reference by the Board in its final order, negates any legal conclusion that Abateco acted willfully to violate such state standards.  We disagree.

"Good faith" and "willfulness" are not mutually exclusive terms.  An act is deemed to have been committed in good faith if it is done honestly and without fraud or deceit.  See Lawton v. Walker, 231 Va. 247, 251, 343 S.E.2d 335, 337-38 (1986).  "[C]onduct is 'willful' when it is intentional."  Angstadt v. Atlantic Mut. Ins. Co., 254 Va. 286, 293, 492 S.E.2d 118, 122 (1997) (quoting RF&P Corp. v. Little, 247 Va. 309, 320, 440

S.E.2d 908, 915 (1994)).  The word "willful" also has been defined, in a non-criminal law context, as denoting an act that is intentional, knowing, or voluntary.  See United States v. Murdock, 290 U.S. 389, 394 (1933), overruled in part, on other grounds, by Murphy v. Waterfront Comm'n, 378 U.S. 52 (1964).  In the context of the federal Occupational Safety and Health Act (OSHA), "willful" has been defined as "'an intentional disregard of, or plain indifference to, OSHA requirements.'"  Reich v. Trinity Indus., Inc., 16 F.3d 1149, 1152 (11th Cir. 1994) (citation omitted).  An employer's good faith belief is irrelevant to the question of whether an employer "willfully" violated the law.  Id. at 1154.  Thus, regardless of whether Abateco could constitutionally demand that the Board obtain a warrant to conduct an inspection of the records upon its premises, Abateco was required by VOSHA regulations and contract to provide the Board access to its employees' medical and health records and refusing to provide access to these records was a willful violation of these standards.

The trial court's letter opinion does not indicate the weight the trial court gave to its finding of good faith when deciding to reverse the Board's finding that Abateco's conduct was "willful."  However, we hold that, to the extent the trial court determined that the finding of good faith on the part of Abateco necessarily required the trial court to set aside the factual finding of the Board that Abateco's conduct was

"willful," for the reasons stated herein, this determination was erroneous.

## IV. EXCESSIVE FINES

The Board argues that the trial court erred in finding that the $2,000 fine imposed by the Board was excessive under the Eighth Amendment of the Constitution of the United States and Article I, § 9 of the Constitution of the Commonwealth of Virginia.

Abateco argues the $2,000 fine imposed by the Board was unconstitutionally excessive because Abateco had previously been sufficiently punished by a fine imposed by the Department. In other words, Abateco suggests that multiple civil penalties imposed by different regulatory authorities for the same conduct are unconstitutionally excessive, regardless of the amount of the penalties.

As the Board noted, there is no Virginia case law applying the excessive fines provision of Article I, § 9 of the Constitution of Virginia to a situation where multiple state agencies have imposed civil penalties for the same conduct. In a criminal context, the Supreme Court of Virginia has stated that in order to violate this constitutional provision, a punishment must "in quantum . . . be so out of proportion to the crime as to shock the conscience . . . ." Hart v. Commonwealth, 131 Va. 726, 745, 109 S.E. 582, 588 (1921).

The Eighth Amendment to the United States Constitution is modeled on and congruent with its companion clause in the Constitution of Virginia. See Solem v. Helm, 463 U.S. 277, 285 n.10 (1983). These constitutional provisions are based upon the

principle that punishment should be proportionate to the crime. The Magna Carta itself provided that "'[a] free man shall not be fined for a small offence, except in proportion to the measure of the offence; and for a great offence he shall be fined in proportion to the magnitude of the offence, saving his freehold . . . .' Art. 20." Harmelin v. Michigan, 501 U.S. 957, 967 (1991) (citation omitted).

In Solem, Justice Powell traced the antecedents of the protection from excessive fines and cruel and unusual punishment from the Magna Carta through the First Statute of Westminster, 3 Edw. I, ch. 6 (1275), the English Bill of Rights, The Virginia Declaration of Rights, authored by George Mason in 1776, to the Eighth Amendment. See Solem, 463 U.S. at 284-85. The Virginia Declaration of Rights still lives as Article I of the Constitution of Virginia.

When the framers of the Virginia Declaration of Rights and the Eighth Amendment adopted the provision prohibiting excessive fines and cruel and unusual punishment embodied in the English Declaration of Rights, they were simply adopting the principle that the punishment should not be disproportionate to the crime.[3]

Abateco has not raised any issue of former jeopardy. Indeed, in its argument, Abateco cites Smolka v. Second Dist. Comm'n, 224 Va. 161, 165, 295 S.E.2d 267, 269 (1982), and concedes the authority of both the Board and the Commissioner of

---

[3] The English Bill of Rights provided in pertinent part "excessive Bail ought not to be required, nor excessive Fines imposed; nor cruel and unusual Punishments inflicted." An Act Declaring the Rights and Liberties of the Subject, and Settling the Succession of the Crown, 1 W. & M. 2, ch. 2 (1689) (Eng.).

the Department to regulate the company.[4]  Furthermore, Abateco
cites no authority for a construction of the Excessive Fines
clause that prohibits the imposition of civil sanctions by
multiple regulatory authorities, and we have found no such
authority.

In examining a punishment for unconstitutional excessiveness
vis-a-vis the Eighth Amendment in a criminal context, the United
States Supreme Court has noted two relevant factors the courts
must bear in mind:  (1) judgments about the appropriate
punishment belong, in the first instance, to the legislature, and
(2) any judicial determination regarding the gravity of a
particular offense will be inherently imprecise.  See United
States v. Bajakajian, 524 U.S. 321, 336 (1998).  Against the
backdrop of these considerations, the United States Supreme Court
adopted the standard of "gross disproportionality" articulated in
its Cruel and Unusual Punishment precedents.  Id.  In simple
terms, if the punishment is grossly disproportional to the
offense, given its nature and the actual or potential harm
involved, such punishment is unconstitutional.  We find this
approach to be reasonable and adopt a similar standard for the
construction of Article I, § 9 of the Constitution of Virginia.

In applying this standard to the facts of this case, we
repeat our earlier observations with respect to the context of
Abateco's conduct:  "[a]sbestos removal is a highly regulated

_____

[4] The constitutional double jeopardy argument in the context
of civil penalties imposed by multiple regulatory agencies has
also been rejected by the federal courts.  See Jones v. Sec. &
Exch. Comm'n, 115 F.3d 1173, 1183 (4th Cir. 1997), cert. denied,
523 U.S. 1072 (1998).

industry in Virginia.  Asbestos removal and asbestos disposal present health and safety hazards to the public and in the workplace."  <u>Abateco</u>, 23 Va. App. at 513, 477 S.E.2d at 799.

In addition to Code § 40.1-51.22, authorizing the Department's imposition of fines for violations, the General Assembly has authorized further sanctions imposed by the Board for willful violations of state or federal standards.  <u>See</u> Code § 54.1-517.  The $2,000 civil penalty imposed by the Board, even when combined with the fine imposed by the Department, is well below the maximum amount authorized by the General Assembly that could have been imposed in this case.  <u>See</u> Code §§ 40.1-51.22 and 54.1-517.  We find that the additional penalty imposed on Abateco by the Board was not grossly disproportional to the offenses committed by Abateco, and the imposition of the Board's penalty does not offend either the Virginia or United States Constitutions.

V.  ATTORNEY'S FEES

Abateco appeals the trial court's denial of its application for reasonable attorney's fees pursuant to Code § 9-6.14:21(A).[5] Because Abateco did not substantially prevail on the merits, and because we find no evidence that the Board's position was "not substantially justified," we find no error in the failure of the trial court to award attorney's fees.

Accordingly, we affirm the decision of the trial court with respect to attorney's fees and reverse and remand with respect to the remaining issues for further proceedings consistent with this opinion.

Affirmed as to Record Number 1780-99-2.

Reversed and remanded as to Record Number 1719-99-2.

---

[5] Code § 9-6.14:21(A) provides:

> In any civil case brought under Article 4 (§ 9-6.14:15 et seq.) of this chapter and § 9-6.14:4.1, in which any person contests any agency action, as defined in § 9-6.14:4, such person shall be entitled to recover from that agency . . ., reasonable costs and attorney fees if such person substantially prevails on the merits of the case and the agency's position is not substantially justified, unless special circumstances would make an award unjust.  The award of attorney fees shall not exceed $25,000.

Benton, J., dissenting.

The proceeding that culminates in this appeal was commenced by the Virginia Board for Asbestos and Lead, see Code §§ 54.1-500 through 54.1-501, as a disciplinary action against Abateco Services, Inc., pursuant to Code § 54.1-516(A)(3), Code § 54.1-517, and 18 VAC 15-20-450. The Board alleged that Abateco failed to meet applicable federal or state standards when it "refus[ed] to permit an inspection [of its records at an asbestos project] in the absence of a warrant." The Board relied upon citations issued by the Department of Labor and Industry and our decision in Abateco Servs., Inc. v. Bell, 23 Va. App. 504, 477 S.E.2d 795 (1996).

At the administrative hearing, Dr. R. Leonard Vance, who is "a university professor at the Medical College of Virginia . . . [,] a licensed attorney and licensed engineer," testified that he had previously been the "Director of Health Standards for U.S. Occupational and Safety Health Administration at [the] U.S. Labor Department . . . [and] spent six years as an Assistant Attorney General as legal counsel to the state OSHA program." He "supervised the preparation of the current federal asbestos OSHA standards . . . [; he is] a member of the Board for Asbestos and Lead in Virginia and participated in the development of Virginia's asbestos regulations . . . [; and he] wrote the only book ever written on the Virginia State OSHA program." Dr. Vance testified that, while acting as legal

counsel for Abateco in 1994, he advised Abateco "that in [his] opinion, . . . the company was entitled to demand a warrant" when the Department attempted to conduct an inspection of Abateco's records. His advice was based upon the following: (i) "a Virginia Supreme Court case," see Mosher Steel-Virginia, Inc. v. Teig, 229 Va. 95, 327 S.E.2d 87 (1985); (ii) Virginia statutes relating to administrative warrants for inspections, see Code §§ 40.1-49.8 and 40.1-49.9; (iii) "the traditional practice in Virginia . . . universally to obtain a warrant any time that a contractor declines to give consent"; and (iv) case law from a United States Court of Appeals requiring OSHA to obtain search warrants for records, see, e.g., National Engineering & Contracting Co. v. Occupational Safety and Health Review Comm'n, 45 F.3d 476 (D.C. Cir. 1995); Tri-State Steel Const., Inc. v. Occupational Safety & Health Review Comm'n, 26 F.3d 173 (D.C. Cir. 1994). Dr. Vance testified that he has given similar advice to members of the enforcement staffs at state and federal OSHA commissions and to other asbestos contractors.

Following the hearing, the administrative hearing officer found as a fact that the Department was "attempt[ing] to conduct an unannounced inspection at Abateco's work site under the authority of . . . Code [§] 40.1-51.21" when Abateco's legal counsel "advised Abateco that it had a right to request the inspector to obtain a search warrant prior to the commencement

of the inspection."  In addition to finding that Abateco relied upon its legal counsel's advice, the hearing officer further found as a fact that in a later meeting held to discuss the impasse, "the representative from the Department . . . stated [to Abateco's agents] that he believed . . . Abateco had the right to demand a search warrant prior to any inspection . . . [, that the representative] indicated . . . he would attempt to obtain a search warrant . . . [, and that] no such warrant was ever issued."  Indeed, the hearing officer found as a fact that on a previous occasion when the Department "had attempted a similar inspection of Abateco's work site on a different job . . . , Abateco refused to allow the inspection without a search warrant . . . and Abateco was not cited for that action."  Based on the evidence at the hearing, the hearing officer also found as a fact that "Abateco reasonably and in good faith believed that it had a right to refuse the state inspection absent a search warrant."

The hearing officer noted that when Abateco refused to allow the inspection without a warrant "an apparent conflict [existed] between . . . sections of the Code of Virginia," see Code §§ 40.1-51.21, 40.1-49.8, and 40.1-49.9, that had not been resolved by the courts.  He further found as a fact that during the trial of the matter that led to our Abateco decision, "the Commonwealth agreed that this was an issue of first impression in Virginia."  Significantly, the hearing officer also found as

a fact that in the Abateco trial, "Abateco's reliance on the advice of counsel as a defense as to the willful elements of the citations was not raised or litigated." The hearing officer, thus, concluded that "[i]n requiring a warrant prior to inspections, Abateco was relying on a good faith belief that it had a statutory and constitutional right to do so" and that "[t]he validity of the assertion of this right under the particular set of facts could only be determined by a court of law." Noting "that Abateco acted in good faith and not for the purpose of evading or impeding the regulatory efforts of the Department," the hearing officer "recommend[ed] the decision that Abateco did not violate a federal or state standard that existed . . . when it refused to allow the document inspection."

Without exception, the Board "adopt[ed] the facts in the hearing officer's report." The Board ruled, however, that despite those facts Abateco violated 18 VAC 15-20-450 and Code § 54.1-516(A)(3) and levied monetary penalties.

On appeal to the circuit court, Abateco argued that because the issue was one of first impression in Virginia in 1994 and the facts, adopted by the Board, proved Abateco acted in good faith upon the advice of legal counsel, the decision of the Board was not supported by the evidence. Significantly, the Board argued, in pertinent part, as follows:

> The only issue the Board was authorized by
> law to consider is was the violation

willful, and the Court of Appeals [in Abateco] said yes, it was.

Now, is the Board absolutely required to accept the decision of the Court of Appeals? In this situation, no, it was not. But what the Board has in a situation of this kind is reasonable discretion, and the Board in its reasonable discretion decided that it would accept the findings of the Court of Appeals and the Circuit Court, that the violations were willful, which means the Board never had to get into the issue of the good faith by contacting their attorney, they didn't have to get into the question of whether this was an instance of first impression, they only had to look to see the willfulness.

Now, let's take a look for just a moment at the first impression issue. What Abateco is saying is it is still an open question in a situation of this kind absent a contract provision, because the Court of Appeals is very clear, where there was a contract provision which waived the contractor's rights to require a warrant, the issue of requiring a warrant is still open. We don't know what the answer to that is going to be, and we will not find out in this case. It is not an issue that is before this court. Is it a standard? What the law says is there must be a willful violation of a standard of the Department of Labor and Industry.

These are the standards that were in effect when this took place in 1994. You can look all through this, Your Honor. You will not see anything in there which relates directly to this issue.

The question of whether or not you have to have a warrant to conduct a search of this kind is a legal argument. It is not a standard of the Department of Labor and Industry.

> The standards go to the technical issues of what the contractor is required to do to provide for the safety and health of his workers and the community in general. Those are the standards.
>
> Were they violated? The Circuit Court and the Court of Appeals said yes. There were four of these standards that were violated.
>
> Were they technical violations that would not directly impact upon the health or safety of any person. Yes, they were.

(Emphasis added).

The trial judge reversed the Board's decision and ruled as follows upon his review of the record:

> that ABATECO did not violate an existing federal or state standard when it refused to allow the subject document inspection;
>
> that the BOARD was in error in deciding that state or federal standards existed at the time of the violation;
>
> that ABATECO relied upon the advice of counsel and acted in good faith; . . . .

I believe the trial judge correctly ruled that the Board did not act in accordance with the law and that the Board lacked sufficient evidential support for its decision. See Johnston-Willis v. Kenley, 6 Va. App. 231, 242, 369 S.E.2d 1, 7 (1988). The hearing officer found and the Board adopted as a fact that "Abateco acted in good faith, and not for the purpose of evading or impeding the regulatory efforts of the Department." That issue was not litigated or decided in our Abateco decision.

I believe that, properly viewed, <u>Abateco</u> only decided the issue of the contractual obligation of the parties and the consequences of Abateco's breach of that contract. In that case, we ruled as follows:

> We hold that Abateco had a diminished expectation of privacy in the requested records; however, we further hold that it contractually waived whatever Fourth Amendment rights it possessed in the records. Because Abateco could not unilaterally revoke its contractual waiver of Fourth Amendment rights without breaching the terms of the contract, the Department had the right to inspect the records without a search warrant, provided it could reasonably do so without breaching the peace. Accordingly, because the Department was not required to obtain a warrant in order to obtain access to the records, the citations issued by the Department were founded. Furthermore, the penalty of $9,665 assessed by the trial court was reasonable and within the range provided for in Code § 40.1-49.4(A)(4)(a). Therefore, we hold that the trial court did not err in upholding the citations and the penalty imposed by the trial court was not excessive.

23 Va. App. at 508, 477 S.E.2d at 797.

This limited reading of our holding is clearly supported by the following disclaimer that we made in <u>Abateco</u>:

> Having determined that Abateco has a diminished expectation of privacy in these records, the question remains whether, absent a waiver of Fourth Amendment rights, a warrant is required. We do not have to decide that question because Abateco contracted with the commissioner to provide access to the records upon request without requiring a warrant and Abateco cannot unilaterally withdraw that consent, which

was a condition of its bargain to perform
the asbestos removal.

Id. at 515, 477 S.E.2d at 800.  As a matter of contract law,
this conclusion necessarily follows from the holding and does no
more than assert the unremarkable proposition that the
Department had a remedy for Abateco's breach of contract.  See,
e.g., Haythe v. May, 223 Va. 359, 361, 288 S.E.2d 487, 488
(1982) (holding that courts will grant specific performance of a
contract if its enforcement will not be inequitable to a
defendant and refusal will damage the other party); Snead v.
Commonwealth, 212 Va. 803, 804, 188 S.E.2d 197, 198 (1972)
(holding that where an entry onto property was lawful and
peaceful, a refusal to leave upon an order does not constitute
an offense).  Indeed, we specifically observed that "because
Abateco had contractually consented to access of its records
without requiring a warrant, the trial court did not err in
upholding the Department's citations."  Abateco, 23 Va. App. at
518, 477 S.E.2d at 802 (emphasis added).

The matter at issue before the Board in this proceeding was
whether Abateco "violat[ed] any provision of . . . Title 54.1 of
the Code of Virginia."  18 VAC 15-20-460.  Specifically, the
Board's inquiry was whether Abateco "fail[ed] to meet any
applicable federal or state standard when performing an asbestos
project or service."  I find no statutory basis for concluding
that the Board, in this proceeding, was authorized to levy a

civil penalty against Abateco solely for Abateco's breach of a contract with the Department.  Certainly, the Board pointed to no provision in the contract that permits such a remedy.  Moreover, nothing in Code § 40.1-49.4(A)(4)(a), the provision the Department apparently relied upon in Abateco, see 23 Va. App. at 511, 477 S.E.2d at 798, permits the Board to levy upon a contractor a civil penalty for breach of contract.

By its regulations, see 16 VAC 25-175-1926, the Department has adopted by reference to 29 CFR 1926 various provisions of the federal OSHA regulations as provisions of the Virginia Occupational Safety and Health regulations.  Those federal regulations require an employer such as Abateco to maintain and permit access by the regulatory agency to specific records. See, e.g., 29 CFR 1926.58(f); 1926.58(k)(4)(ii); 1926.58(m); 1926.58(n)(5)(ii) and (ii); and 1926.58(e)(4).  The right of access to those records is delimited, in pertinent part, as follows:

> Each employer shall, upon request, and without derogation of any rights under the Constitution or the Occupational Safety and Health Act of 1970, 29 U.S.C. 651 et seq., that the employer chooses to exercise, assure the prompt access of representatives of the Assistant Secretary of Labor for Occupational Safety and Health to employee exposure and medical records and to analyses using exposure or medical records.

29 CFR § 1910.1020(e)(3)(i) (emphasis added).

Although upon advice of counsel Abateco refused to allow the Department to inspect Abateco's records without a warrant, the Department has never alleged or proved that Abateco did not, in fact, maintain the proper records. Indeed, the hearing officer found as a fact and the Board adopted the finding that "[t]he records sought by the Department . . . were produced by Abateco . . . [; consequently] no additional citations were brought against Abateco based upon the records that were produced." The Department alleged a violation of Code § 40.1-51.21, which provides as follows:

> At least once a year, during an actual project, the Department of Labor and Industry shall conduct an on-site unannounced inspection of each licensed asbestos contractor's, licensed RFS contractor's, and certified lead contractor's procedures in regard to installing, removing and encapsulating asbestos and lead. The Commissioner or an authorized representative shall have the power and authority to enter at reasonable times upon any property for this purpose.

Relying upon his interpretation of Code § 40.1-49.8 and Code § 40.1-49.9, Abateco's counsel, who had extensive experience as a regulator and as counsel to the regulators, advised Abateco that it could withhold its consent and require the Department to obtain a search warrant for access to the records. Indeed, Code § 40.1-49.8 specifically addresses the use of warrants in the inspection of workplaces:

> In order to carry out the purposes of the occupational safety and health laws of the

Commonwealth and any such rules, regulations, or standards adopted in pursuance of such laws, the Commissioner, upon representing appropriate credentials to the owner, operator, or agent in charge, is authorized, with the consent of the owner, operator, or agent in charge of such workplace as described in subdivision (1) of this section, or with an appropriate order or warrant:

(1) To enter without delay and at reasonable times any factory, plant, establishment, construction site, or other area, workplace or environment where work is performed by an employee of an employer; and

(2) To inspect, investigate, and take samples during regular working hours and at other reasonable times, and within reasonable limits and in a reasonable manner, any such place of employment and all pertinent conditions, structures, machines, apparatus, devices, equipment, and materials therein, and to question privately any such employer, owner, operator, agent or employee.

As an adjunct to this statute, Code § 40.1-49.9 addresses the requirements of probable cause for the issuance of warrants and clearly applies to industries that have a "high hazard ranking."

The record in this case is undisputed that Abateco acted in good faith upon its experienced counsel's advice in asserting constitutional, statutory, and case decision grounds for requiring the Department to obtain a search warrant to inspect its records. When an entity, "while acting in good faith with the advice of counsel, failed to comply with the provisions of the Act," the evidence clearly establishes that "there were no willful and knowing violations." Nageotte v. Board of

Supervisors of King George County, 223 Va. 259, 269, 288 S.E.2d

423, 428 (1982).  Defining "willful," the Supreme Court of

Virginia has recently cited with approval United States v.

Murdock, 290 U.S. 389, 394 (1933).  See Angstadt v. Atlantic

Mutual Ins. Co., 254 Va. 286, 293, 492 S.E.2d 118, 122 (1997).

The United States Supreme Court more recently explained the

Murdock definition of "willful" as follows:

> While a criminal defendant, like an
> employer, need not have knowledge of the law
> to act "knowingly" or intentionally, he must
> know that his acts violate the law or must
> "careless[ly] disregard whether or not one
> has the right so to act" in order to act
> "willfully."  United States v. Murdock, 290
> U.S. 389, 395 (1933) . . . .  We have
> interpreted the word "willfully" the same
> way in the civil context.  See McLaughlin v.
> Richland Shoe Co., 486 U.S. 128, 133 (1988)
> (holding that the "plain language" of the
> Fair Labor Standards Act's "willful"
> liquidated damages standard requires that
> "the employer either knew or showed reckless
> disregard for the matter of whether its
> conduct was prohibited by the statute,"
> without regard to the outrageousness of the
> conduct at issue).

Kolstad v. American Dental Assn., 527 U.S. 526, 549 (1999)

(citation omitted).

Furthermore, even if Abateco's breach of its contractual

obligation to consent was willful and designed to require the

Department to obtain a warrant for inspection, that conduct does

not ipse dixit become a willful violation of Code § 40.1-51.21.

"The definition of 'willful' . . . is, in its simplest form, 'an

intentional disregard of, or plain indifference to, OSHA

requirements." Reich v. Trinity Indus., Inc., 16 F.3d 1149,
1152 (11th Cir. 1994). See also Brockaway v. Easter, 20 Va.
App. 268, 271, 456 S.E.2d 159, 161 (1995) (holding that
"'[w]illful' . . . involves the idea of premeditation and
determination to do the act, though known to be forbidden").

The hearing officer found as a fact that Abateco relied
upon the advice of counsel and its prior course of conduct with
the Department in asserting that it could require, consistent
with the statutory framework, a warrant for inspection of its
records. Moreover, the Board adopted all the hearing officer's
factual findings, including the fact that Abateco was acting in
good faith when it relied upon its counsel's advice. Thus, in
my opinion, the trial judge did not err in ruling that the Board
had no basis upon which to impose civil penalties under Code
§§ 54.1-516 or 54.1-517.

In Abateco, we held only that the Department retained a
contractual right of entry that negated any privacy claim that
Abateco alleged. Even if we assume, however, that our decision
in Abateco resolved the issue whether a violation of Code
§ 40.1-51.21 occurred when Abateco breached its contract and
required the Department to obtain a warrant for the records, I
believe the hearing officer correctly noted that the legal
issue, which "appeared to revolve around an apparent conflict
between [Code §§ 40.1-49.8, 40.1-49.9, and 40.1-51.21] of the
Code of Virginia," had not been decided in 1994 when Abateco

demanded that the Department obtain the warrant.  As the majority correctly notes "[w]hether a warrant is necessary is a legal, procedural issue, not a safety and health standard."

For these reasons, I would affirm the trial judge's order. I respectfully dissent.