COURT OF APPEALS OF VIRGINIA


Present:  Judge Annunziata, Senior Judges Duff and Hodges
Argued at Alexandria, Virginia


MAGCO OF MARYLAND, INC.
                                        OPINION BY
v.    Record No. 2377-99-4    JUDGE ROSEMARIE ANNUNZIATA
                                       AUGUST 1, 2000
JOHN MILLS BARR, COMMISSIONER OF
 DEPARTMENT OF LABOR AND INDUSTRY


          FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                    Joanne F. Alper, Judge

          Bruce M. Luchansky (Frank L. Kollman;
          Seth C. Berenzweig; Juliet D. Hiznay;
          Kollman & Sheehan, P.A.; Albo & Oblon,
          L.L.P., on briefs), for appellant.

          Ellen F. Brown, Assistant Attorney General
          (Mark L. Earley, Attorney General, on
          brief), for appellee.


     Magco of Maryland, Inc. ("Magco"), appeals from the

decision of the Circuit Court of Arlington County, affirming

Magco's citation by the Commissioner of Labor and Industry

("Commissioner") for a serious violation of the safety standards

promulgated by the Virginia Occupational and Safety Health

Program ("VOSH"), 16 VAC §§ 25-175-1926.501(b)(4) and

1926.502(i)(2), including a penalty of $7,000.  Magco contends

the trial court erred 1) in imputing to Magco its foreman's

knowledge of hazardous conditions on the worksite as a basis

for Magco's liability; and 2) in placing upon Magco the burden

of proof to establish "unpreventable employee misconduct" as a

defense to Magco's liability. We find no error and affirm the decision of the trial court.

BACKGROUND

We view the facts in this case "in the light most favorable to sustaining the Commissioner's action and 'take due account of the presumption of official regularity, the experience and specialized competence of the Commissioner, and the purposes of the basic law under which the Commissioner has acted.'" Sentara Norfolk General Hosp. v. State Health Comm'r, 30 Va. App. 267, 279, 516 S.E.2d 690, 696 (1999) (internal brackets omitted) (quoting Bio-Medical Applications of Arlington, Inc. v. Kenley, 4 Va. App. 414, 427, 358 S.E.2d 722, 729 (1987)). In December, 1996, Magco was engaged in roofing work on a building in Arlington, Virginia. Magco's foreman on the project, John Hataloski, was "solely responsible for this project" as Magco's on-site superintendent. His responsibility was, "inter alia, to make all field calls and to act as the safety officer responsible for project safety." Hataloski had extensive experience and training in safety issues associated with roof construction and repair and "was more familiar with the safety regulations than any of Magco's other foremen," being Magco's "most knowledgeable foreman" with respect to OSHA regulations.

During the course of the project, Hataloski observed various holes in the roof of the building that were not properly

- 2 -

covered.  On numerous occasions, Hataloski complained to the general contractor, Turner Construction ("Turner"), that the open holes constituted a hazardous condition for the workmen on the roof.  Turner was responsible for attending to site safety, including covering holes on the roof.  At Hataloski's direction, it covered all the roof openings with three-quarter inch plywood.  Periodically, however, the mechanical contractor removed the covers to perform its ductwork and frequently failed to replace the covers.  Despite Hataloski's safety concerns and Turner's generally inadequate response to Hataloski's complaints, Magco continued to have its employees work on the roof without wearing fall protection devices, properly covering the holes in the roof, or erecting guardrails around the holes.

Magco employees Kevin Barnes and Frank Allen were working on the site with Hataloski on December 20, 1996.  Barnes was "a relatively new employee," who was assigned to work with Hataloski on a section of the roof close to a hole "which opened to a seven to eight story shaft below."  Hataloski was aware of the presence of the hole, and he knew that it lay in close proximity to the section of roof where he and Barnes would be working.  Upon arriving at the site on the day in question, Hataloski noted that "a portion of the shaft . . . had been covered with a piece of plywood and another portion of the shaft had been covered with a wooden pallet or 'skid.'  Neither the

plywood nor the wooden pallet entirely covered the opening." The uncovered surface area of the hole was approximately 1.2 square feet. A metal beam had been laid across the pallet and rested on cinder blocks placed on either side of the shaft. Hataloski directed Barnes and Allen to move the beam so that they could better access the work area, which was located approximately two feet from the opening of the shaft. Hataloski did not check the pallet to ensure that it was secured. Hataloski testified that "he should have checked the pallet and that he probably knew the pallet was a risk to the safety of the employees that morning."

Allen went to work on another area of the roof, while Hataloski and Barnes began to work near the shaft. They were not wearing fall protection equipment, and no guardrail had been erected around the opening in the roof. The two men squatted in an area between the wall of the building and the opening of the shaft, a space approximately two feet wide. Barnes' back was toward the shaft. As the men worked, Barnes leaned backward as if to sit upon the wooden pallet covering the shaft. When he placed his weight on the pallet, it gave way and Barnes fell through the opening. He landed approximately 71 feet below, suffering fatal injuries.

David Cline, a compliance officer for VOSH, investigated the accident. Based upon his investigation, the Commissioner

- 4 -

issued Magco a citation for a "serious violation" of construction safety standards and assessed a penalty of $7,000, citing § 1926.501(b)(4)(i)[1] of the VOSH regulations.  The Commissioner found the violation based on the following:  "[the wooden pallet] wasn't large enough to cover the hole . . . it wasn't secure . . . it had slits in it that an employee could actually step his feet through and break an ankle, sprain, or actually go through.  It's not an adequately covered hole using that pallet."

Magco contested the citation, and the Commissioner filed a Bill of Complaint in the Circuit Court of Arlington County, pursuant to Code § 40.1-49.4(E), to enforce the penalty.  The circuit court heard the case on August 17, 1999, and issued an order enforcing the Commissioner's citation and penalty on September 7, 1999.  This appeal followed.

<u>IMPUTATION OF SUPERVISOR'S KNOWLEDGE</u>

Magco contends that the trial court erred in imputing to it its foreman's knowledge of hazardous conditions on the worksite. We disagree.

---

[1] The regulation provides:

> Each employee on walking/working surfaces
> shall be protected from falling through
> holes . . . more than 6 feet (1.8 m) above
> lower levels, by personal fall arrest
> systems, covers, or guardrail systems around
> such holes.

The construction of the specific statutory provisions implementing federal Occupational Safety and Health Act ("OSHA") regulations before us raises issues of first impression in the Commonwealth. OSHA regulates conditions in private industry workplaces which affect worker safety and health. The federal government assigned OSHA enforcement responsibilities in Virginia to VOSH. To maintain federal OSHA approval, Virginia is required to maintain an OSHA program standard that is "at least as effective as" the federal standard. See 29 C.F.R. § 1902.37(b)(4).

Under the Virginia OSHA plan, VOSH inspects the private industry workplace for compliance with the applicable standards. Upon "reasonable cause to believe" that a violation has occurred, VOSH will issue a citation to the employer. Code § 40.1-49.4(A)(1). VOSH identifies a violation as "serious" if

> there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted, or are in use, in such place of employment unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violations.

Code § 40.1-49.3.

Magco has not challenged the trial court's factual findings in this case. Those findings include: 1) that Hataloski was Magco's foreman on the project; 2) that he was the

- 6 -

"superintendent" of the project; 3) that he was responsible for project safety; 4) that he knew of the hazard presented by holes in the roof of the building in question; and 5) that he was specifically aware of the danger presented by the hole through which Barnes fell. Based on these findings, the trial court imputed Hataloski's knowledge of the safety hazard to Magco, a decision which Magco contends constitutes reversible error. Magco's position is not supported by applicable Virginia law.

Although the proof required to show an employer's knowledge of violations under this statute has not been addressed by our appellate courts, whether knowledge of certain worksite conditions may be imputed to an employer is well settled in Virginia case law. Indeed, it is a longstanding principle in the Commonwealth that a foreman's knowledge of facts or events on a worksite is imputed to his employer. See Duke v. Luck, 150 Va. 406, 409, 143 S.E. 692, 693 (1928) (foreman's knowledge that one of his crewmen had caused accident imputed to employer); Dept. of Game & Inland Fisheries v. Joyce, 147 Va. 89, 97, 136 S.E. 651, 654 (1927) (notice to foreman of accident constituted notice to employer); Low Moor Iron Co. v. La Bianca's Adm'r, 106 Va. 83, 91, 55 S.E. 532, 533 (1906) ("Ordinarily the foreman or boss of a gang of hands employed in executing the master's orders is a mere fellow servant with the other members of the gang, but if he is discharging a nonassignable duty of the

master, he is to that extent a vice principal.  One of these nonassignable duties is to exercise ordinary care to provide a reasonably safe place in which the servant is to work.").  Furthermore, the imputation of a supervisor's knowledge of safety hazards to his employer comports with federal law and policy.  See Sec. of Labor v. Capform, Inc., 13 OSHC 2219 (1989) (where employer's supervisors were "continually present at the worksite," Secretary established prima facie case that employer knew of safety violations); Sec. of Labor v. Wright & Lopez, Inc., 8 OSHC 1261 (1980) (foreman's knowledge of conditions at construction site was imputable to employer, considering discretion given to the foreman in regard to safety procedures); Sec. of Labor v. Safeway Stores, Inc., 6 OSHC 1176 (1977) (grocery store's produce manager was a "supervisory employee" because he had personnel working under him whom he could discipline, was charged with ordering produce, and was charged with general maintenance of his department, and therefore his actions and knowledge were imputable to his employer).  Magco concedes that Hataloski was aware of the danger posed by improperly covered holes on the worksite.  Thus, Hataloski's knowledge is to be imputed to Magco, and we, therefore, affirm the trial court's decision.

Moreover, the trial court's decision is fully supported on the ground that, under Code § 40.1-49.3, the Commissioner's

burden of proof may be met upon a showing that Magco should have known of the violation in the exercise of reasonable diligence. See, e.g., Kokosing Construction Co., 17 OSHC 1869 (1996) ("The conspicuous location, the readily observable nature of the violative condition, and the presence of Kokosing's crews in the area warrant a finding of constructive knowledge."). See also Austin Building Co. v. OSHRC, 647 F.2d 1063, 1068 (10th Cir. 1981) (evidence sufficient to prove that the company knew or should have known that hazardous practice existed, where "the employee welding in this precarious spot was easily observable. A diligent foreman checking the safety of his workers should have discovered the hazardous conduct.").

Our review of the record establishes that Michael Gaulin, the company's operations manager and vice president, and Mark Gaulin, the company's president, had primary responsibility for inspecting the site and regularly did so. The record also establishes that the safety hazard posed by uncovered or incompletely covered holes in the roof at the site was open and obvious, and the Gaulins were informed about the absence of full coverings for the holes and the safety hazard they posed. In short, the record fully supports the court's conclusion that Magco knew or should have known of the problem on the worksite that resulted in Barnes' death. Therefore, because Hataloski's knowledge of the hazards on the site may be imputed to Magco,

and because the senior officers of Magco knew or should have known of those hazards, we affirm the trial court's decision.

## THE BURDEN OF PROVING EMPLOYER DEFENSES

In its defense, Magco argued that it did all it could do to ensure the safety of its employees and that it was not liable for the unforeseeable, idiosyncratic conduct of its foreman who failed to check and secure the pallet.  It contends the court erred in placing on it the burden of proving unforeseeable and unpreventable employee misconduct, citing in support Ocean Electric Corp. v. Sec. of Labor, 594 F.2d 396 (4th Cir. 1979), and L. R. Willson & Sons, Inc. v. Occupational Safety and Health Review Comm'n, 134 F.3d 1235 (4th Cir.), cert. denied, 525 U.S. 962 (1998).  In these cases, the United States Court of Appeals for the Fourth Circuit has held that unpreventable employee misconduct was not an affirmative defense to a citation[2] and that, although a supervisor's knowledge of a safety hazard could be imputed to the employer, employer liability is not strict liability.  Accordingly, the Fourth Circuit has held that when a

---

[2] We note that the Fourth Circuit's holding is a minority view, with most of the federal circuits holding that employee misconduct is an affirmative defense, the burden of proof for which falls on the employer.  See D. A. Collins Constr. Co. v. Sec. of Labor, 117 F.3d 691, 695 (2d Cir. 1997); Brock v. L. E. Myers Co., High Voltage Div., 818 F.2d 1270, 1276 (6th Cir.), cert. denied, 484 U.S. 989 (1987); Daniel Internat'l Co. v. OSHRC, 683 F.2d 361, 364 (11th Cir. 1982); H. B. Zachry Co. v. OSHRC, 638 F.2d 812, 818 (5th Cir. 1981); General Dynamics Corp. v. OSHRC, 599 F.2d 453, 458-59 (1st Cir. 1979); Danco Constr. Co. v. OSHRC, 586 F.2d 1243, 1247 n.6 (8th Cir. 1978).

violation is the result of employee misconduct, i.e., where it is created by an isolated, idiosyncratic act of an employee, the Secretary of Labor[3] must prove as part of his case-in-chief that the employee's conduct was "not unpreventable and not unforeseeable."[4]

The conclusions reached by the Fourth Circuit regarding the burden of proof on the issue of employee misconduct are not binding on this Court, see Maxey v. American Casualty Co. of Reading, Pa., 180 Va. 285, 290, 23 S.E.2d 221, 223 (1942), and we decline to follow its allocation of the burden of proof, because it is inconsistent with Virginia law. While we agree that employer liability based on worksite safety violations is not absolute, see Pike v. Dept. of Labor and Industry, 222 Va. 317, 322-23, 281 S.E.2d 804, 807 (1981), the burden of proof in establishing employee misconduct as a limitation on employer

---

[3] Under Virginia law, the Commissioner is the counterpart of the Secretary of Labor.

[4] In Ocean Electric, the specific element that the Secretary of Labor failed to prove was the "adequacy of the employer's safety policy." In Ocean Electric, as in Willson, the violation was created by an employee/supervisor's failure to adhere to a specific safety rule. In such instances, it must be determined whether the conduct was foreseeable, implicating the adequacy of the employer's safety regulations and program. See Ocean Electric, 594 F.2d at 402 (where it was stipulated that employee/supervisor's violation of safety regulation was "accidental, not intentional, and purely a human error," it was incumbent upon the Secretary to introduce evidence on the adequacy of the employer's safety program. Having failed to meet its burden of proof on this issue, liability could not be imposed on the employer.).

- 11 -

liability resides with the employer.  VOSH has enacted

regulations defining the parameters of the employee misconduct

defense under Virginia law.  These regulations are set forth in

the VOSH Administrative Regulations Manual, codified at 16 VAC

§ 25-60-260.  According to the pertinent regulation, an employer

may avoid liability for a safety violation due to employee

misconduct if

> [the] employer demonstrates that:
>
> 1) employees of such employer have been provided with the proper training and equipment to prevent . . . a violation;
>
> 2) work rules designed to prevent such a violation have been established and adequately communicated to employees by such employer and have been effectively enforced when such a violation has been discovered;
>
> 3) the failure of employees to observe work rules led to the violation; and
>
> 4) reasonable steps have been taken by such employer to discover any such violation.

16 VAC § 25-60-260 (emphasis added).  Thus, under Virginia law,

the burden of proving any such defense to a citation, including

unforeseeability, is on the employer.  Cf. Ocean Electric, 594

F.2d at 401-02 (Secretary has burden of proving inadequacy of

safety regulations); cf. also Willson, 134 F.3d at 1241.

Moreover, under the pertinent regulations, employers cannot

claim the defense based on the misconduct of "any officer,

management official or supervisor having direction, management

- 12 -

control or custody of any place of employment which was the subject of the violative condition cited."  16 VAC § 25-60-260. The regulation defines "employee" to exclude supervisory personnel.[5]  See id.  Thus, under the regulations adopted pursuant to Code § 40.1-22(5), the defense of employee misconduct does not apply to the acts of supervisory personnel and does not insulate Magco from liability in this case.

For the reasons stated, we affirm the decision of the trial court.

Affirmed.

---

[5] 16 VAC § 25-60-260 provides:  "[T]he term 'employee' shall not include any officer, management official or supervisor having direction, management control, or custody of any place of employment which was the subject of the violative condition."

- 13 -