COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Humphreys and Senior Judge Coleman
Argued at Chesapeake, Virginia


C. RAY DAVENPORT, COMMISSIONER,
  VIRGINIA DEPARTMENT OF
  LABOR AND INDUSTRY

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0015-04-1                      JUDGE SAM W. COLEMAN III
                                                         NOVEMBER 9, 2004
G.D.C., INC.


                    FROM THE CIRCUIT COURT OF YORK COUNTY
                              Prentis Smiley, Jr., Judge

            Catherina F. Hutchins, Assistant Attorney General (Jerry W. Kilgore,
            Attorney General, on brief), for appellant.

            Paul C. Miller for appellee.


        The Commissioner of the Virginia Department of Labor and Industry (the

"Commissioner") appeals from an order of the circuit court dismissing citations he issued against

G.D.C., Inc. ("GDC") for two "serious violations" of the Virginia Overhead High Voltage Line

Safety Act (the Act).  Code § 59.1-406 *et seq.*; Code § 40.1-49.3.  The Commissioner contends

the trial court erred by (1) dismissing the two serious violations when the evidence had clearly

established the violations, and (2) applying tort law analysis in determining whether GDC had

violated Code §§ 59.1-408 and -410.  Concluding the circuit court used an incorrect analysis, we

vacate the circuit court's order and remand the case for findings using an appropriate analysis.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

We view the facts in this case "in the light most favorable to sustaining the Commissioner's action and 'take due account of the presumption of official regularity, the experience and specialized competence of the Commissioner, and the purposes of the basic law under which the Commissioner has acted.'" Sentara Norfolk General Hosp. v. State Health Comm'r, 30 Va. App. 267, 279, 516 S.E.2d 690, 696 (1999) (internal brackets omitted) (quoting Bio-Medical Applications of Arlington, Inc. v. Kenley, 4 Va. App. 414, 427, 358 S.E.2d 722, 729 (1987)).

GDC entered into a "Subcontract Agreement" with Browning-Ferris, Inc. ("BFI") to transport waste material from BFI's solid waste transfer station in York County to disposal sites. As part of the agreement, BFI would "provide the services and equipment necessary to load the trailers" and GDC would provide "all services and equipment required to drop load or live load the trailers and perform . . . transportation," including trucks and trailers. Dominion Virginia Power has a 200 feet wide easement to suspend high voltage power lines across a portion of BFI's transfer station property.

On June 2, 2003, Kelly Smith, a truck driver employed by GDC, received a fatal electric shock as he stood on a trailer filled with garbage. Although there were no witnesses to the accident, the evidence suggested that Smith had climbed on the filled trailer to cover its contents with a tarpaulin. At the time of the accident, the trailer was parked beneath the overhead high voltage lines. Measurements taken after the accident showed that the distance between the top of the trailer and the closest overhead line was eight feet. At trial, there was no dispute that the driver, who stood five feet nine inches tall, would have been within six feet of the power lines when standing on the trailer. This incident caused the Commissioner to investigate whether GDC had violated the Act.

In a discussion with counsel and GDC's representative concerning stipulations and undisputed facts, the trial judge learned that a cord had been hanging from the high voltage lines before the fatal accident. Although the record indicates investigators found a burned cord at the accident scene, the cord apparently was lost prior to trial. However, viewing photographs of the accident scene, the court noted the hanging cord was visible at the time the photos were taken.

The undisputed facts established that GDC drivers pulled empty trailers onto the property. BFI moved the empty trailers to the loading station, filled the trailers, and moved the trailers to a holding area. GDC drivers would later arrive with an empty trailer, leave the empty trailer on the property, secure a filled trailer to the tractor, and drive away with the filled trailer.

Charles Nobles, a trash hauler, testified that he visited the facility approximately 1,000 times a year in the course of his business. He testified that he frequently observed loaded trailers parked under the power lines, and explained he often saw GDC drivers climb on top of the trailers to cover them with tarpaulins while they were parked under the power lines. He identified a diagram showing several trailers in a row, with one parked under the power line. He said "one was always there." The diagram showed that the loaded trailers were parked around a semicircular "dirt path" over which the power lines crossed any vehicle parked at the front of the "path." According to the diagram, only the truck or trucks parked at the front of the semicircle would have been under the power lines.

Ronald Cooper, vice-president of GDC, testified he visited the site an average of six times a year for the purpose of "looking for hazards or anything that causes a problem." He testified that twenty-two of his trailers were assigned to the station to be filled by BFI and then to be individually hauled by eight of his tractors. He testified "it was a regular course of business that BFI would cover any loaded trailer at the end of the day." He also testified that he never saw trailers parked under the power lines. Rather, he testified that he saw the loaded trailers

parked in the back of the station, and he drew that location on a diagram. He further testified that none of his drivers informed him of the power lines as a hazard. Cooper agreed that the power lines were readily apparent to anyone visiting the site. In fact, Cooper stated that he did not like to leave his car while visiting the site because the power lines "snap, crackle, and pop."

The circuit court, focusing on the foreseeability of the electric cord causing the accident, dismissed the Commissioner's citations for the two serious violations of the Act. The judge found "this was an isolated incident, not foreseeable" and the "cause of this tragedy" was the hanging cord. The circuit court did hold, however, that GDC had committed "an other than serious" violation of the Act by failing to maintain an injuries log.

ANALYSIS

The federal Occupational Safety and Health Act ("OSHA") regulates conditions in private industry workplaces which affect worker safety and health. The federal government assigned OSHA enforcement responsibilities in Virginia to the Virginia Occupational and Safety Health Program ("VOSH"). To maintain federal OSHA approval, Virginia is required to maintain an OSHA program standard that is "at least as effective as" the federal standard. See 29 C.F.R. § 1902.37(b)(4).

Under the Virginia OSHA plan, VOSH inspects the private industry workplace for compliance with the applicable standards. Upon "reasonable cause to believe" that a violation has occurred, VOSH will issue a citation to the employer. Code § 40.1-49.4(A)(1). VOSH identifies a violation as "serious" as follows:

> "Serious violation" means a violation deemed to exist in a place of
> employment if there is a substantial probability that death or
> serious physical harm could result from a condition which exists,
> or from one or more practices, means, methods, operations, or
> processes which have been adopted, or are in use, in such place of
> employment unless the employer did not, and could not with the

- 4 -

exercise of reasonable diligence, know of the presence of the violations.

Code § 40.1-49.3.

Following Smith's electrocution, VOSH conducted an investigation of the incident. As a result of the investigation, the Commissioner alleged violations of Code § 59.1-408.1(i) and § 59.1-410(A) and issued GDC two "serious violation" citations. The Commissioner also issued one "other than serious violation" for failing to maintain an injury log as required by the VOSH Administrative Regulations. The other than serious violation is not at issue in this appeal.

Code § 59.1-408.1 provides, in pertinent part:

No person shall, individually or through an agent or employee, perform, or require any other person to perform, any work or activity upon any land, building, highway or other premises that will cause (i) such agent, employee or other person to be placed within six feet (1.8 meters) of any overhead high voltage line . . . .

Code § 59.1-410 requires any person desiring to work in closer proximity to the overhead high voltage lines to notify the owner or operator of the line. The manner of notification is prescribed in Code § 59.1-411, and work may take place only after negotiation and agreement between the employer and the line owner. The Commissioner concluded GDC had allowed an employee to work within six feet of the high voltage lines in violation of Code § 59.1-408.1(i) and had failed to notify Dominion Virginia Power, the owner of the lines.

Undisputed Facts

Before trial, both parties agreed to all the pertinent facts surrounding the incident and indicated the only dispute involved GDC's knowledge that a hazardous condition or practice existed and whether GDC was a responsible person required under the Act to contact the owner of the power lines. Although GDC contends on appeal that the evidence failed to establish Smith was within six feet of the wires at the time he was injured, GDC's counsel agreed before trial that "their calculations place [Smith] within that zone. And I can't put on any evidence to show

otherwise." When the court announced, "Okay. That's not in dispute," GDC agreed. GDC may not now argue on appeal Smith was not within six feet of the wires when its acquiescence at the hearing obviated the necessity for the Commissioner to further prove that fact. "The defendant, having agreed upon the action taken by the trial court, should not be allowed to assume an inconsistent position." Clark v. Commonwealth, 220 Va. 201, 214, 257 S.E.2d 784, 792 (1979).

Prohibited Activity

"[U]nder Code § 40.1-49.3, the Commissioner's burden of proof may be met upon a showing that [the employer] should have known of the violation in the exercise of reasonable diligence." Magco of Maryland, Inc. v. Barr, 33 Va. App. 78, 85, 531 S.E.2d 614, 617 (2000). The trial court, in its review of the evidence, was required to determine under the Act whether the hazard was "open and obvious" and whether GDC "knew or should have known of the problem [or practice or condition] on the worksite that resulted in [Smith's] death." Id.

Instead, the trial court focused solely on the cause of the fatal accident, concluding the hanging cord caused Smith to come into contact with the electrical wires and that his death therefore was not reasonably foreseeable. The trial court did not determine whether a GDC employer or its employees were working in violation of the Act due to a prohibited condition or practice in the workplace and whether GDC knew or should have known of any violations. Although the trial court determined that the proximate cause of Smith's death was from other than a violation of the Act, that finding did not end the inquiry. Remaining to be decided was whether Smith's presence within six feet of the overhead wires constituted a violation of the statute. In other words, even if Smith had not been fatally injured, did *GDC know or should*

*have known that its employees were working beneath the wires in such proximity to be in violation of the Act.*[1]

Although the court noted that "Nobles' observations were better than" Cooper's regarding the working conditions at the site, that comment does not constitute a finding that GDC knew or should have known that its employees were working so close to the wires to be in violation of the Act. We also cannot presume that the judge's foreseeability ruling concerning the cord's position also relates to GDC's knowledge of the practice of parking the trucks. We do not presume that the trial judge made the necessary findings to support his ruling when the record shows that an incorrect standard was applied. Thus, we vacate the trial court's order and remand the case to the trial court to make the necessary, additional findings consistent with this opinion.

Notification

GDC contends it was not responsible for notifying Dominion Virginia Power of work being done in close proximity to the wires, as required by Code § 59.1-410. Specifically, Code § 59.1-410 requires, in pertinent part, that "[w]hen any person desires to carry on any work in closer proximity to any overhead high voltage line than permitted by this chapter, *the person responsible for the work* shall promptly notify the owner or operator of the high voltage line . . . ." Code § 59.1-407 provides that "'Person' means natural person, firm, business association, company, partnership, corporation or other legal entity." It further explains that "'Person responsible for the work' means the person performing or controlling the work."

The record indicates that GDC was operating on the site under a "Subcontract Agreement" with BFI. That agreement provides rights and obligations of the parties. Although

---

[1] Effective July 1, 2003, Code § 59.1-408 has been amended to provide that "[n]o person shall . . . work . . . within ten feet (3.1 meters) of any overhead voltage line."

the trial judge found that the cause of the accident was the hanging cord and, therefore, concluded that GDC did not violate the Act, he made no findings whether GDC and/or BFI was responsible for placing the trailers under the wires, whether GDC employees were the persons who regularly placed the tarpaulins on the loaded trailers, or whether GDC had been aware of the activity, and was a "person" required under the Act to notify the owner of the lines.

Accordingly, we vacate the final order and remand the case to the circuit court to determine whether GDC knew or should have known that its employer or employees engaged in prohibited activity under the Act.

<u>Vacated and remanded.</u>

Humphreys, J., concurring, in part, and dissenting, in part.

I write separately both to amplify the majority's discussion of the applicable law and to dissent from the majority's holding that the trial court's statement relating to foreseeability and causation necessarily indicates that the trial court applied the incorrect standard of law.

Once a violation of the Virginia OSHA regulations has been established, that violation may be deemed "serious" if

> there is a substantial probability that death or serious physical harm *could* result from [the condition causing the violation] . . . *unless* the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the *violation*.

Code § 40.1-49.3 (emphases added). Accordingly, once the Commissioner has demonstrated both that an OSHA regulation applies, and that a violation of that regulation has occurred, the violation will be deemed "serious" if the Commissioner can demonstrate both: (1) that the violation has created a "substantial probability" of death or serious physical harm; and (2) that the employer had actual or constructive knowledge of the condition causing the violation.

The statutory language, then, does not require proof of either actual injury or causation: The Commissioner is not obligated to show that a death or serious physical harm *did* result from the violation, but rather, that a death or serious physical harm *could have* resulted from the violation. Moreover, the Commissioner does not need to establish that the employer knew or should have known about the risk of death or serious physical harm. Rather, the Commissioner must prove that the employer knew or should have known of the *violation*. See Magco of Md., Inc. v. Barr, 33 Va. App. 78, 85, 531 S.E.2d 614, 617 (2000) ("[T]he Commissioner's burden of proof may be met upon a showing that [the employer] should have known *of the violation* in the exercise of reasonable diligence." (emphasis added)).

Here, the trial court found that the Commissioner failed to establish a "serious" violation, reasoning as follows:

- 9 -

> [T]he evidence points to the real cause of this tragedy to be the wire that was hanging from the power lines. The photograph of the cord that was hanging, that's the culprit as far as this Court is concerned. Therefore, this Court finds that this was an isolated incident, not foreseeable and, therefore the Court dismisses the charges.

Thus, the trial court's language appears to focus on whether this particular death was proximately caused by (*i.e.*, a foreseeable result of) the violation. As discussed above, however, the Commissioner did not need to prove that the alleged violation actually and proximately caused Smith's death. Rather, the Commissioner only needed to show that the violation created a substantial probability of *an* injury, not a substantial probability of *this* injury. To interpret the statute as requiring proof that a violation actually and proximately caused a particular injury would force the Commissioner to wait until a death or other injury has occurred before he could issue a citation for a "serious" violation. This interpretation would be antithetical to the preventative purposes of the OSHA regulations. Accordingly, I concur with the majority's conclusion that the trial court erred *if* it relied solely on the lack of actual or proximate cause when it dismissed the "serious" violations.

But I am not convinced, as is the majority, that the language used by the trial court automatically gives rise to the presumption that its dismissal of the "serious" violations was predicated solely on the quoted discussion regarding foreseeability and causation. "Absent clear evidence to the contrary in the record, the judgment of a trial court comes to us on appeal with a presumption that the law was correctly applied to the facts." Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977). Thus, "we will not fix upon isolated statements of the trial judge taken out of the full context in which they were made, and use them as a predicate for holding the law has been misapplied." Id. Moreover, a "trial court's remark is not, in and of itself, 'the full context' simply because it represents the only point at which the court

- 10 -

[expressly] addressed the issue [in dispute]." Bassett v. Commonwealth, 13 Va. App. 580, 583-84, 414 S.E.2d 419, 421 (1992).

Here, looking at the full context of the proceedings before the trial court, there is no "clear evidence" that the trial court did not know and correctly apply the law. Rather, considering both the proceedings as a whole and the lack of any evidence in the record establishing that the employer actually knew or should have known about its trucks being parked beneath the power line, it is plausible that the trial court, in addition to and separate from its commentary on foreseeability and lack of causation, concluded that the Commissioner failed to carry his burden of proof. Thus, in my view, although the trial court uses language more properly associated with a tort proceeding, the context in which the statement is made makes it clear to me that the trial court was merely stating, albeit inartfully, its finding that, because there had never been any similar accidents at the site, this was an "isolated incident." And, because there had been no previous incidents that would have alerted the employer to the fact that the trucks were parking underneath the overhead power lines, the employer did not know, nor should it have known, about the condition causing the violation. In my opinion, then, the trial court implicitly concluded that the Commissioner failed to establish that the employer knew or should have known of the condition causing the violation.

This conclusion is supported by a review of the entirety of the trial proceedings. In the "Plaintiff's Memorandum of Law," for example, the Commissioner provided the trial court with a correct statement of the required statutory factors. The court went through each of these factors with counsel during the trial proceedings. The trial court's comments to counsel throughout the trial are demonstrative of the court's concern that the employer did not have actual or constructive knowledge of the condition causing the violation. Specifically, the trial court repeatedly questioned whether the truck drivers had been instructed not to park underneath

- 11 -

the power lines, and additionally focused on the fact that no one, over the course of two and a half years, had been electrocuted at the site. Considering the trial court's comments throughout the entirety of the proceedings, it is reasonable to conclude that the trial court was unwilling to impute knowledge of the condition causing the violation to the employer.

In sum, there is no "clear evidence" that the trial court did not know and correctly apply the law, and we should not "fix upon [the] isolated statements of the trial judge . . . and use them as a predicate for holding the law has been misapplied." Yarborough, 217 Va. at 978, 234 S.E.2d at 291. Rather, as in Yarborough, we should "construe the trial judge's statements as furnishing alternative bases, one correct and one erroneous," for his holding that the "serious" violations should be dismissed. Id. Thus, because there is no "clear evidence" in the record that the trial court did not know and correctly apply the law, I would affirm the judgment of the trial court, and I respectfully dissent from the majority's decision to remand this case for further proceedings.