COURT OF APPEALS OF VIRGINIA


Present:   Judges Kelsey, Haley and Powell
Argued at Alexandria, Virginia


FAIRFAX COUNTY DEPARTMENT OF
   PUBLIC WORKS AND ENVIRONMENTAL
   SERVICES
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0745-09-4                      JUDGE CLEO E. POWELL
                                                    DECEMBER 22, 2009
C. RAY DAVENPORT, COMMISSIONER,
   DEPARTMENT OF LABOR
   AND INDUSTRY


               FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                           Dennis J. Smith, Judge

            Brian S. Yellin (David P. Bobzien, County Attorney; Cynthia L.
            Tianti, Senior Assistant County Attorney; Law Office of Adele L.
            Abrams, P.C.; Office of the County Attorney, on brief), for
            appellant.

            Crystal Y. Twitty, Assistant Attorney General (William C. Mims,
            Attorney General; Maureen Riley Matsen, Deputy Attorney
            General; Peter R. Messitt, Senior Assistant Attorney General, on
            brief), for appellee.


        Fairfax County Department of Public Works and Environmental Services (DPWES)

appeals a final order of the circuit court finding that substantial evidence supported all but two of

the Virginia Occupational Safety and Health (VOSH) civil penalty citations issued by the

Virginia Department of Labor and Industry (DOLI) for violations of the safety standards

incorporated by the VOSH program.  On appeal, DPWES contends that the circuit court erred

by:  1) determining that substantial evidence proved that the confined space at issue here requires

a permit; 2) concluding that the commissioner of DOLI met his burden of proving employer

            [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

knowledge by substantial evidence; 3) failing to address DPWES's affirmative defense of employee misconduct; and 4) classifying citation 2, item 3 as willful because this classification is not supported by substantial evidence. Finally, DPWES asserts that the commissioner of DOLI impermissibly withheld documents from DPWES that supported the commissioner's determination that several violations were willful. On cross-appeal, DOLI argues that the circuit court erred in vacating citation 2, item 4b where substantial evidence supported the commissioner's decision.

We hold that DPWES failed to preserve its objections that the circuit court erred by failing to address its affirmative defense of employee misconduct and the commissioner impermissibly withheld documentation from it that supported the willful violations because DPWES never made these arguments to the circuit court. Further, we affirm the circuit court's decision to uphold DOLI's determination that the space in question was a permit-required confined space, that there was substantial evidence proving employer knowledge, and that the classification of citation 2, item 3 as willful was supported by substantial evidence. Finally, we reverse the circuit court's decision to vacate citation 2, item 4b because there is substantial evidence in the record to support the commissioner's finding.

## I. BACKGROUND[1]

As an inspector in the Storm Water Management Division of DPWES, Phillip Miley was responsible for inspecting the internal structures of private and public wet pond facilities, underground retention facilities, manholes, catch basins, and risers. He inspected the internal structures of these facilities for blockages, cracks, and other structural faults. On August 1, 2005, during the performance of his duties, Miley inspected a private wet pond facility in Fairfax

---

[1] Because the parties are fully conversant with the record in this case and this memorandum opinion carries no precedential value, we recite only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

- 2 -

County. Before entering the manhole at this location, Miley placed two cones near the manhole but did not place any barrier on the manhole. Miley then entered the manhole without an attendant present and, while inside, fell down a shaft that was ten feet, nine inches deep.[2] During the fall, Miley struck his head on a storm water valve and received cuts on the back of his head and abrasions on his right arm. Miley then crawled into another pipe, where he died from these injuries. Miley did not have any communications equipment with him and was, therefore, unable to summon any assistance.

Gregory Pappas, a compliance officer with DOLI, investigated the fatality and determined that the confined space that Miley was inspecting when he died contained or had the potential to contain several safety hazards: falls, engulfment, atmospheric, and other hazards (i.e., being struck by objects falling or being thrown into the open manhole). Pappas learned from DPWES employees, including safety analyst Dean Blackwell, that because DPWES had a program in place to evaluate potential hazards in confined spaces on public but not private land, the wet pond that Miley entered on August 1, 2005 was not inspected for hazards before or during his entry. Pappas's investigation revealed that Miley was not equipped to test for atmospheric hazards. Pappas further learned from Tim Fink, an engineering technician with DPWES, that prior to Miley's death, DPWES employees routinely "[broke] the plane" of confined spaces to take photographs, but employees received no training on how to do so.[3]

---

[2] Miley entered similar spaces at least twenty-two times in the year preceding his death, but the permits associated with those entries do not indicate that an attendant was present for all of those entries. Photographs taken during some of those entries and other records associated with those entries, however, reveal that an attendant was present for some entries.

[3] By "breaking the plane," these employees entered the confined space in violation of VOSH regulations as the regulations consider "entry" to have occurred as soon as any part of the entrant's body breaks the plane of an opening into the space.

Following Pappas's investigation, DOLI determined that DPWES violated the provisions of the VOSH standards and issued numerous serious and willful citations against DPWES on January 20, 2006. The DPWES requested an informal fact-finding conference, which was held on May 22 and 23, 2007 before Ellen Marie Hess, a hearing officer for DOLI. On August 17, 2007, Hess submitted the results and recommendations of her fact finding to the commissioner. Hess recommended that the commissioner vacate two violations, reduce three others from willful to serious, and uphold the remaining twenty violations. The DOLI vacated four additional violations. The commissioner accepted the results and recommendations as the final agency decision on September 12, 2007. In so doing, DOLI determined that the space Miley entered was a permit-required confined space, that DPWES knew or should have known that employees were entering permit-required confined spaces in violation of VOSH's regulations, that DPWES employees were not provided with required safety equipment, that DPWES policies and forms were deficient, and that the employees' proficiencies were not evaluated as required.

DPWES appealed the agency's final decision to the circuit court and alleged that DOLI's decisions lacked substantial evidence to support them. In a letter opinion, the circuit court held that "a reasonable mind would accept the facts set forth in the record as substantial evidence to support DOLI's conclusion regarding all of the violations" except two violations that the circuit court then vacated.

Specifically, the circuit court held that under 29 C.F.R. § 1910.146, a permit-required confined space is any space that has one or more of the following characteristics:

> (1) contains or has a potential to contain a hazardous atmosphere;
>
> (2) contains a material that has the potential for engulfing the entrant;

- 4 -

(3) has an internal configuration such that the entrant could be trapped or asphyxiated by inwardly converging walls or by a floor which slopes downward and tapers to a smaller cross-section; or

(4) contains any other recognized safety or health hazard.

The court concluded that there was substantial evidence in the record to support the finding that the wet pond facility was a permit-required confined space. The court specifically cited Pappas's testimony that among the hazards present or potentially present at the site Miley entered were wild animals, slip hazards, engulfment hazards, fall hazards due to the unguarded shaft, and explosions due to flammable gasses. The court stated that, contrary to appellant's assertions, a reasonable mind could conclude that a fall hazard was not the only hazard present at the site. Thus, the circuit court held that there was substantial evidence to support the agency's determination that this space was a permit-required confined space.

The circuit court also found that interviews in which DPWES employees admitted violations they committed and knowledge of other employee violations revealed that DPWES failed to review permits that disclosed violations and provided substantial evidence that DPWES knew or should have known about the violations by employees. The circuit court held that there was substantial evidence supporting the characterization of citation 2, item 3 as willful because DPWES knew or should have known that employees entered permit-required confined spaces without an attendant present and that DPWES systematically failed to implement this standard. Finally, the circuit court vacated citation 2, item 4b because it found that there was not substantial evidence in the record to prove that Blackwell did not review the permit-required confined space program annually.

## II.  ANALYSIS

### A.  Preliminary Issues

DPWES presents five questions in this appeal.  We will initially dispose of those questions presented that were not adequately preserved for appeal and, therefore, will not be considered.  The rules of our Court provide that

> [n]o ruling . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice.

Rule 5A:18.  This rule exists so that the circuit court is alerted to possible error and is afforded the opportunity to "consider the issue intelligently and take any corrective actions necessary to avoid unnecessary appeals, reversals and mistrials."  Martin v. Commonwealth, 13 Va. App. 524, 530, 414 S.E.2d 401, 404 (1992) (citing Campbell v. Commonwealth, 12 Va. App. 476, 480, 405 S.E.2d 1, 2 (1991) (en banc)).

DPWES argues that the circuit court committed reversible error when it failed to address DPWES's affirmative defense of employee misconduct.  DPWES also contends that the commissioner impermissibly withheld documentation from DPWES supporting the willful violations.  Though DPWES made both of these arguments to the agency, DPWES did not make either of these arguments in its memorandum of law in support of its petition for appeal to the circuit court and the circuit court did not rule on either argument in its letter opinion.  Therefore, we find that these issues were not properly preserved for appeal and we decline to consider them.  Though this Court may invoke the ends of justice or good cause shown exceptions to consider a matter not raised below, DPWES does not ask us to do so and we will not do so *sua sponte*.  Edwards v. Commonwealth, 41 Va. App. 752, 761, 589 S.E.2d 444, 448 (2003) (en banc).

B.  Substantive Issues

1.  Standard of Review

On appeal, we review "the facts in the light most favorable to sustaining" the agency's decision.  Atkinson v. Virginia Alcoholic Beverage Control Commission, 1 Va. App. 172, 176, 336 S.E.2d 527, 530 (1985).  To do so, we "take due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted."  Code § 2.2-4027.  Review of an agency's factual findings "is limited to determining whether substantial evidence in the agency record supports its decision."  Avante at Lynchburg, Inc. v. Teefey, 28 Va. App. 156, 160, 502 S.E.2d 708, 710 (1998).  "[T]he burden is upon the appealing party to demonstrate error."  Carter v. Gordon, 28 Va. App. 133, 141, 502 S.E.2d 697, 700-01 (1998); see also Code § 2.2-4027.  "The reviewing court may reject the agency's findings of fact *only if*, considering the record as a whole, *a reasonable mind would necessarily come to a different conclusion*."  Johnston-Willis v. Kenley, 6 Va. App. 231, 242, 369 S.E.2d 1, 7 (1988) (emphasis added).

"[W]here the question involves an interpretation which is within the specialized competence of the agency and the agency has been entrusted with wide discretion by the General Assembly, the agency's decision is entitled to special weight in the courts."  Id. at 244, 369 S.E.2d at 8.

> The rationale of the statutory scheme is that the [administrative agency] shall apply expert discretion to matters coming within its cognizance, and judicial interference is permissible only for relief against the arbitrary or capricious action that constitutes a clear abuse of the delegated discretion.  The reviewing judicial authority may not exercise anew the jurisdiction of the administrative agency and merely substitute its own independent judgment for that of the body entrusted by the Legislature with the administrative function.

Id. (quoting Virginia Alcoholic Beverage Control Commission v. York Street Inn, Inc., 220 Va. 310, 315, 257 S.E.2d 851, 855 (1979)). The trial court may reverse the administrative agency's interpretation only if the agency's construction of its regulation is arbitrary and capricious or fails to fulfill the basic purpose of the law under which the agency acts. Id. at 246, 369 S.E.2d at 9.

### 2. Whether there is Substantial Evidence to Support the Finding that the Space Miley Entered was a Permit-Required Confined Space

Initially, DPWES contends that the record does not provide substantial evidence that the space that Miley entered was a permit-required confined space because the trial court relied on Pappas's "erroneous, unsubstantiated and speculative" testimony and disregarded the testimony of DPWES's expert, Stuart Stein.[4] DPWES makes three arguments in support of this position. First, DPWES contends that its expert testified that there was no engulfment hazard at this site. Second, DPWES asserts that the risk of falling is not a recognizable hazard.[5] Third, DPWES argues that because Pappas did not specifically identify a hazard, this could not be considered a permit-required confined space. Based on these arguments, DPWES contends that the court erroneously determined that the space was a permit-required confined space and, therefore, the

---

[4] Without citation to the record, DPWES also contends that the circuit court "disregarded the federal OSHA compliance directives and agency letters of interpretation regarding 29 C.F.R. 1910.146, which govern enforcement of the standard nationwide."

[5] The Federal Occupational Safety and Health Act ("OSHA") regulates conditions in private industry workplaces which affect worker safety and health. The Virginia Occupational and Safety Health Program ("VOSH") is required under OSHA to maintain and enforce an OSHA program standard that is "at least as effective as" the federal standard. See 29 C.F.R. § 1902.37(b)(4). Although the federal Occupational Safety and Health Administration has construed its regulations in an interpretation letter to not require a permit for a space where the *only* hazard potentially present was falling into the space, this interpretation is not binding on our Commonwealth as VOSH may implement more stringent standards. Here, the Attorney General argued that Virginia has defined a fall as a hazard but presented nothing in support of this argument. As the risk of falling through the open manhole cover is not the only hazard potentially present at the site Miley inspected on the day he died, we need not address whether the risk of falling into a hole is itself enough to require a permit in Virginia.

following citations are invalid: citation 1, items 1b, 1c, 1d, 2a through 2n, 3a, 3b, 4a, 4b, 4c, 5a, 5b, and citation 2, items 1, 2, 3a, 3b, 3c, and 4. The commissioner responds that based on the record, a reasonable mind would not necessarily conclude that there were not sufficient hazards present or potentially present at the wet pond that Miley entered for it to qualify as a permit-required confined space.

The hearing officer and the commissioner found by a preponderance of evidence that the space Miley entered was a permit-required confined space. Specifically, the hearing officer found that the space contained or had the potential to contain fall hazards, engulfment hazards, and other hazards. Based on the agency record, the circuit court concluded that the space posed the potential hazard of slips, falls, engulfment hazards, wild animals, and explosions from flammable gasses. The circuit court rejected DPWES's argument that a fall is not a hazard. Assuming without deciding that a fall hazard is not a recognized hazard, there is ample evidence in the record upon which the agency based its determination and the circuit court concluded that "considering the record as a whole, a reasonable mind would [not] necessarily come to a different conclusion." Johnston-Willis, 6 Va. App. at 242, 369 S.E.2d at 7.

It is undisputed that the wet pond facility Miley was inspecting at the time of his death was a "confined space."[6] Therefore, we turn to whether it is a confined space that requires a permit. A "permit-required confined space" is defined as a confined space with at least one of the following characteristics:

> (1) Contains or has a potential to contain a hazardous atmosphere;
>
> (2) Contains a material that has the potential for engulfing an entrant;

---

[6] A confined space "[i]s a space large enough that an employee can bodily enter the space and perform work[,]" with limited or restricted means of entry or exit and "is not designed for continuous employee occupancy." 29 C.F.R. § 1910.146(b).

(3) Has an internal configuration such that an entrant could be trapped or asphyxiated by inwardly converging walls or by a floor which slopes downward and tapers to a smaller cross-section; or

(4) Contains any other recognized serious safety or health hazard.

29 C.F.R. § 1910.146(b).

DPWES relies heavily on the testimony of its expert in support of its argument that none of the hazards delineated by DOLI's investigator, Pappas, existed. Initially, it should be noted that not all of the dangers need to have been identified nor actually exist for a space to be a permit-required confined space. The regulations only require that some hazards be "potential." Thus, DPWES's argument fails for several reasons. First, DPWES's own employee, Blackwell, told Pappas that the space in question was a permit-required confined space. Moreover, in addition to Blackwell's admission, "[t]he credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995).

As previously stated, Pappas testified that the space was a permit-required confined space because, *inter alia*, there was the potential for engulfment hazards and other recognized safety and health hazards. Regarding the engulfment hazard, Pappas further opined that there was a potential engulfment hazard created by the fact that the private structures are only inspected every five years. According to Pappas, because of this length of time between inspections, the walls could crack allowing water to come through to the dry side. DPWES's expert did not totally disagree with this position testifying that "certainly if you had a structural failure in the wall between the wet side and the dry side, then you could have a potential engulfment hazard." As it cannot be said that Pappas's testimony was inherently incredible, the hearing officer was entitled to accept his testimony regarding the existence or potential existence of hazards.

Pappas also testified in detail about what should have been done to test the air quality in the space that Miley entered. From this testimony, the fact finder could infer that this space contained the potential for atmospheric hazards. In fact, when questioned regarding the atmospheric hazard, DPWES's own expert, Stein, testified that even before they put a camera down into a hole to take a picture (i.e., break the plane), it is standard procedure to test the atmosphere because there might be a problem. This procedure supports Pappas's conclusion that an atmospheric hazard could still be potentially present, even for one who is not physically going into the hole.

Finally, the directives issued by the United States Department of Labor (the Department) regarding the application of permit-required confined space standards support the commissioner's position. In response to a question regarding the scope of the phrase "any other recognized serious safety and health hazard," the Department stated that other hazards may include electrical hazards, rodents, snakes, spiders, poor visibility, wind, weather, or insecure footing. The Department opined that the list was only illustrative of a general range of confined space hazards that could, but would not necessarily always, constitute a hazard that would present an immediate danger to the life and health such that "permit space" protection would be required. In recognizing without deciding that such conditions could be covered, the Department concluded that the employer must address such potential exposures. One with specialized competence could consider the possibility of this broad range of "other hazards" as a whole and conclude that there existed the sort of "other recognized serious safety or health hazard" included within the definition of a permit-required confined space in 20 C.F.R. § 1910.146(b).

As we have previously stated, "[t]he construction which an administrative agency gives to its regulation, if reasonable, is entitled to great deference." Virginia Real Estate Board v. Clay, 9 Va. App. 152, 160, 384 S.E.2d 622, 627 (1989) (holding that "the trial court erred in its

interpretation of Regulation 8.2(36) by substituting its construction of the regulation for the Board's reasonable interpretation . . . [and] by failing to defer to the experience and specialized competence of the Board in interpreting the regulation which it promulgated."). Given the nature of the space at issue and the hazards present or potentially present, we defer to DOLI's specialized competence in determining whether this space is a permit-required confined space. Further, because it cannot be said on the face of this record that a reasonable person would necessarily come to a different conclusion than the agency did or that the agency's specialized interpretation of its regulation is arbitrary and capricious, we do not find that the circuit court erred in finding substantial evidence that the space in question was a permit-required confined space.

### 3. Whether there is Substantial Evidence to Support the Circuit Court's Judgment that the Commissioner Met his Burden of Proving Employer Knowledge

A "'serious violation' means a violation deemed to exist in a place of employment if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use, in such place of employment *unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation*." Code § 40.1-49.3 (emphasis added). "[T]he commissioner's burden of proof may be met upon a showing that [the employer] should have known of the violation in the exercise of reasonable diligence." Magco of Maryland, Inc. v. Barr, 33 Va. App. 78, 85, 531 S.E.2d 614, 617 (2000).

DPWES argues that the circuit court erred in finding that the commissioner met his burden of proving by a preponderance of the evidence that the employer had "actual or constructive knowledge" of the violations because it presented compelling evidence that its policy prohibited the actions that Miley and other employees took. DPWES also contends that the commissioner contradicts his own argument that information contained in DPWES permits

- 12 -

proves that DPWES knew or should have known about the violations by also arguing that DPWES failed to review its permits. [7] Essentially, DPWES argues: 1) although there was ample evidence in our files from which we knew or should have known that our employees violated our policies with impunity on a regular basis, because we had a policy prohibiting such actions, we cannot be held responsible; and 2) although we were required to review our records to ensure compliance, our failure to do so excuses any other violation. Neither argument is persuasive.

Specifically, to support the citations that DPWES challenges on appeal to our Court, the record must contain substantial evidence that DPWES knew or should have known 1) that its measures to prevent employees from entering permit-required confined spaces were not effective, 2) that DPWES's permit-required confined space program did not include all permit-required confined spaces, 3) that its forms were deficient, 4) that the pre-entry verification required for permit-required confined spaces was not done nor was it verified that the space was acceptable for occupation throughout the duration of the authorized entry at the space Miley entered on August 1, 2005, and 5) that DPWES failed to establish employee proficiency. The record here, both through DPWES's documents and employee admissions, provides substantial evidence such that it cannot be said that a reasonable person would necessarily reach a different conclusion than the commissioner did about whether DPWES knew or should have known of the violations.[8]

---

[7] Though the commissioner contends that these questions are waived because DPWES failed to specifically state to which citation(s) this question presented applied, it is clear that this question subsumes the employer knowledge requirement for each citation and, therefore, this Court does not find that DPWES waived this issue through its framing of the question presented. That said, DPWES made arguments on appeal as to only seven items: citation 1, items 1a, 1d, 2a, 2c, 2e, 4b, and 4c. Therefore, we only review whether the record contains substantial evidence as to those seven items.

[8] Because the question of whether DPWES knew or should have known of the violations is not one that falls within the specialized competence of the agency, we afford deference only to DOLI's factual findings and not its interpretations.

First, although the record does not clearly show that DPWES had actual knowledge that Miley was violating entry rules regarding private permit-required confined spaces, the record contains ample evidence from which one could conclude that DPWES should have known that its measures to prevent employees from entering permit-required confined spaces in violation of its policies were ineffective. For example, in direct contravention of DPWES's argument that there was no evidence that Miley entered private permit-required confined spaces is a chart entered into evidence at the informal fact-finding hearing by DOLI as Petitioner's Exhibit M labeled "Confined Space Entry Permits by Phil Miley." The first entry on that document, dated October 28, 2004, indicates an entry by Miley into a private confined space. The document also indicates that the entry was unaccompanied. Despite DPWES's argument that it had policies prohibiting certain acts, DPWES's own documentation indicates that, on a routine basis, employees were not following policy and that DPWES took no preventative action to stop further rule violations.

Further, VOSH regulations provide that an inspector should not enter a permit-required confined space without an attendant. Yet, the evidence indicated that Miley and others routinely entered such spaces without an attendant. Specifically, Fink, a DPWES engineering technician, provided substantial evidence from which the commissioner could find that when an attendant was present, the attendant also signed the confined space entry permit. Because no one else signed Miley's permits, it was reasonable to infer that no one else was present when Miley entered. Clearly, Miley was entering both private and public permit-required confined spaces and was doing so unaccompanied prior to his death. This information was available to DPWES in its confined space entry permits.

Moreover, testimony from DPWES employees provides substantial evidence that DPWES should have known that Miley was not the only employee entering permit-required

- 14 -

confined spaces in violation of DPWES policy. Fink testified that on occasion he entered manholes unaccompanied. Fink also indicated that it was routine for employees to remove the manhole cover and reach in to take photographs, thereby breaking the plane. Blackwell acknowledged that it is DPWES's policy for its employees to take pictures of the internal structures of confined spaces from the outside by sticking their hands and arms into the space. As previously stated, this practice was a clear violation of VOSH regulations that considered an "entry" to have occurred as soon as any part of the entrant's body broke the plane of the space. Therefore, even if Blackwell did not actually know that this practice violated the regulation, because the regulation is clear and unambiguous, he should have known.

Second, the record also contains substantial evidence to support the conclusion that DPWES knew or should have known that permit-required confined spaces on private land were not being evaluated. Indeed, Blackwell admitted that DPWES had a program to evaluate confined spaces to determine whether they required permits before entry, but DPWES did not include private facilities in this evaluation. This admission, combined with the evidence that DPWES knew or should have known that its employees were violating procedures, enabled the agency and the circuit court to conclude that there was substantial evidence that DPWES knew that not all facilities were being examined in compliance with established VOSH regulations.

Third, as previously mentioned, the fact that DPWES knew or should have known that its employees were entering permit-required confined spaces on private property in violation of its policies. DPWES also knew, as Blackwell admitted, that its permit-required confined space program did not apply to such spaces on private property. From this, the agency had substantial evidence before it to support its conclusion that DPWES's forms, which only applied to facilities on public land, were deficient.

- 15 -

Fourth, Blackwell's admission that a pre-entry verification was not done on the site Miley entered on August 1, 2005 provided the agency and the circuit court with substantial evidence of employer knowledge in support of this violation. Moreover, substantial evidence, in the form of Pappas's testimony that there was no gas meter at the site and Blackwell's admission that the space was not evaluated prior to Miley's entry, supports the conclusion that DPWES knew or should have known that it does not verify "that conditions in the permit-required confined space are acceptable for entry throughout the duration of an authorized entry."

Fifth, the agency and the circuit court found substantial evidence in the record to prove that DPWES failed to "establish employee proficiency" by accepting the fact finder's decision to credit the testimony of Miley's supervisor, Crawford, who admitted that he did not check employee proficiencies on gas meters over Blackwell's testimony that the supervisors tested the employee's proficiencies using the gas meters.

Finally, DPWES contends that Blackwell's admission that, in the performance of his duties as a DWPES safety analyst, he did not review the cancelled confined space permits to determine whether there were deficiencies that needed to be addressed through training, negates employer knowledge. This argument, however, is without merit as the standard requires that the employer knew *or should have known through reasonable diligence*. Certainly, reviewing permits as required would have enabled DPWES to learn that its employees were violating its policies, satisfying the knowledge requirement for a serious violation. However, even if they did not review the permits, the information was readily available to them as it was in their system, satisfying the requirement that with reasonable diligence they should have known. Therefore, the circuit court correctly found substantial evidence that the employer should have known about the deficiencies in its program and provided training to remedy those issues.

<u>4. Whether the Circuit Court's Judgment that Citation 2, Item 3 is Properly Classified</u>
<u>as Willful is Supported by Substantial Evidence</u>

DPWES next asserts that the circuit court's classification of citation 2, item 3 as willful is not supported by substantial evidence in the record. A willful violation is

> a violation deemed to exist in a place of employment where (i) the employer committed an intentional and knowing, as contrasted with inadvertent, violation and the employer was conscious that what he was doing constituted a violation; or (ii) the employer, even though not consciously committing a violation, was aware that a hazardous condition existed and made no reasonable effort to eliminate the condition.

16 VAC 25-60-10. In <u>Dept. of Professional and Occupational Regulation, Board of Asbestos and Lead v. Abateco Services, Inc.</u>, 33 Va. App. 473, 480-81, 534 S.E.2d 352, 356 (2000), <u>aff'd upon rehearing en banc</u>, 35 Va. App. 644, 547 S.E.2d 529 (2001), we held that Abateco Services's failure to produce records upon request, when it had a statutory duty to do so, constituted a willful violation despite the fact that Abateco Services relied in good faith on advice of counsel in refusing to disclose the records. We noted that "good faith" and "willfulness" are not mutually exclusive terms. <u>Id.</u> at 480, 534 S.E.2d at 356. This Court defined "willful" in a non-criminal context "as denoting an act that is intentional, knowing, or voluntary." <u>Id.</u> "In the context of the federal Occupational Safety and Health Act (OSHA), 'willful' has been defined as 'an intentional disregard of, or plain indifference to, OSHA requirements.'" <u>Id.</u> (quoting <u>Reich v. Trinity Indus., Inc.</u>, 16 F.3d 1149, 1152 (11th Cir. 1994)).

Here, the circuit court concluded that there was substantial evidence that DPWES acted willfully as to the violation of citation 2, item 3, even if DPWES clearly did not act in bad faith. The court so ruled because it determined that the record revealed that DPWES was aware that Miley and other employees entered the permit-required confined spaces without an attendant present. The court concluded that "[a] reasonable mind could conclude that DPWES'[s] indifference to compliance of the enumerated regulations is indicative of the agency's 'willful'

- 17 -

non-compliance." As previously discussed, the agency's determination that the space Miley entered was a permit-required confined space was neither arbitrary nor capricious. Because it cannot be said that a reasonable person would necessarily reach a different conclusion based on this record, the circuit court did not err in affirming the agency's determination.

### 5. Whether the Circuit Court Erred in its Decision to Vacate Citation 2, Item 4b

On appeal, the commissioner assigns cross-error to the circuit court's decision to vacate citation 2, item 4b. In citation 2, item 4b, the agency alleged that DPWES willfully violated 29 C.F.R. § 1910.146(d)(14), which requires that the employer must "review the permit space program . . . within one year after each entry and revise the program as necessary, to ensure employees participating in the entry operation are protected from permit space hazards." The commissioner asserts that the record contains substantial evidence that the cancelled permits retained by DPWES contained numerous deficiencies that had not been corrected. The commissioner contends that because the standard of review requires that the circuit court review the evidence in the light most favorable to sustaining the agency's determination, the circuit court erred in vacating this citation.

As noted above, on appeal, the agency's factual findings must be upheld unless a reasonable mind would necessarily reach a different result and we defer to an agency's specialized competence in interpreting regulations where the agency's interpretation is not arbitrary and capricious. Here, the circuit court determined that this citation contained two parts: 1) annual review of the permits, and 2) revisions to the program as necessary to protect employees. The circuit court held that the record lacked substantial evidence to support this citation with regard to the first part, annual review. The court found substantial evidence in the record to support the second part of the citation that alleged that DPWES did not revise the program as necessary. The court determined that because this is a single citation, the

- 18 -

commissioner must prove both parts with substantial evidence. Because the record is unclear whether the program was reviewed within one year after each entry, the circuit court concluded that the citation was unsupported by substantial evidence, and the court vacated the citation.

During the course of his investigation, Pappas learned that there were numerous deficiencies in DPWES's permits, including no space to indicate the purpose for entry or potential hazards. Moreover, the record contains substantial evidence from which the fact finder could infer that the annual reviews to discover these deficiencies were not conducted. Specifically, the fact finder could infer, as it did, that neither Blackwell nor DPWES was reviewing the permits annually because the deficiencies were never corrected. Moreover, Pappas testified to the hearing officer that Blackwell admitted that he did not review the permits. For the circuit court to overturn the agency's decision, the circuit court would have had to have found that a reasonable mind would *necessarily* conclude, based on this record, that DPWES was conducting annual reviews. It cannot be said that a reasonable mind would necessarily reach the opposite conclusion than the agency did or that the agency's interpretation was arbitrary and capricious. Therefore, we reverse the circuit court's decision to vacate this citation and remand to the circuit court for entry of an order consistent with this opinion.

### III. CONCLUSION

For these reasons, we determine that DPWES's arguments that the circuit court erred in not considering the affirmative defense of employee misconduct and its argument that the agency intentionally withheld willful documentation are procedurally barred. We further hold that there is substantial evidence in the record to support the agency's decision that the space Miley entered was a permit-required confined space, that DPWES knew or should have known about the violations, and that DPWES's violation in citation 2, item 3 was willful. Finally, we conclude

- 19 -

that the circuit court erred in vacating citation 2, item 4b as it cannot be said that a reasonable

mind would necessarily reach a different conclusion than the agency.

<u>Affirmed, in part,</u>
<u>and reversed and</u>
<u>remanded, in part.</u>