COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Ortiz and Senior Judge Humphreys
Argued at Lexington, Virginia

PUBLISHED

TORI TURNER, ET AL.

OPINION BY
v.      Record No. 1508-23-3      JUDGE ROBERT J. HUMPHREYS
AUGUST 6, 2024

MASSIE MHP, LLC

FROM THE CIRCUIT COURT OF MONTGOMERY COUNTY
Robert M.D. Turk, Judge

Kristi J. Murray (Southwest Virginia Legal Aid Society, on briefs),
for appellants.

Kathryn A. Poe (John D. Eure; Bryan Grimes Creasy; Johnson,
Ayers & Matthews, on brief), for appellee.

In an issue of first impression with respect to a relatively recent statute, in this appeal we are asked to construe the intent of the General Assembly in its use of the word "willfully" in the context of Code § 55.1-1243.1(A).

Twelve current and former tenants of a mobile home park[1] sued the park's owner, Massie MHP, LLC, under Code § 55.1-1243.1 for willful interruption of an essential service. The circuit court dismissed the tenants' claims after concluding that they failed to prove Massie willfully interrupted their water service. The tenants contend that the circuit court misapplied the governing legal standard.

---

[1] The tenants—Tori Turner, Barbara Bowyer, Glenn Godfrey, Kristi Morris, Jacqueline Snyder, John Vaught, Alesia Moorefield, Siera Brammer, Bridget Hite, Lori Howell, Kara Albert, and Evonne Huff—each filed separate actions, which the circuit court consolidated.

BACKGROUND

Massie purchased the mobile home park in August 2022. The tenants were all then residents of the park. The same month, Massie applied to the Montgomery County Public Service Authority (the "utility") for water and sewer services for the park. Massie's application requested that utility billing statements be sent by both mail and email. The utility recorded Massie's email address correctly but, due to confusion over the handwriting in the application, recorded Massie's mailing address incorrectly.

The utility then began sending Massie water bills at the correct email address but an incorrect mailing address. On September 15, 2022, the utility sent Massie an invoice showing "current" charges of $4,282.97, with a due date of October 5, 2022. The invoice stated that "[f]ailure to pay delinquent accounts by the due date will result in termination of service," and listed November 5, 2022, as the "disconnect date for current charges." On October 15, 2022, the utility sent an invoice showing "current" charges of $8,912.29 and a total amount due of $13,621.06. The invoice listed a "due date" of November 5, 2022, and a "disconnect date for current charges" of December 5, 2022. Finally, on October 20, 2022, the utility sent a delinquent utility payment notice listing a "total due" of $13,621.06 and an "amount past due" of $4,708.77. The notice stated that the mobile home park's water "[s]ervice will be disconnected by November 07, 2022, or soon thereafter," unless Massie paid the past due amount of $4,708.77 "on the business day prior to November 07, 2022." The utility sent each of the three notices to Massie's correct email address and the incorrectly recorded mailing address.

On November 3, 2022, Charles Campbell, the director of the utility, called Massie's office and left a voicemail message requesting that Massie contact the utility regarding its outstanding balance. In the message, Campbell told Massie that the mobile home park would

"be on the cut-off list" and that the water would "be cut off if payment was not made," but did not specify the cut-off date.

As of November 7, 2022, Massie had not paid its bill or otherwise responded to the invoices, delinquency notice, or Campbell's voicemail. Still, the utility did not shut the water off.

On November 10, 2022, Massie employee Mikelle Greenburg called the utility and spoke with Sarah Reed, an accounting technician for Montgomery County Finance, which manages the billing, collection, and reporting for the utility. Greenburg asked Reed to send another copy of the October 15 invoice to the same email address which Massie had listed on its water and sewer application, and to which the utility had sent all the previous notices and billing statements. Reed emailed another copy of the invoice that day. In an email response the same morning, Greenburg noted that the utility had listed an incorrect mailing address for Massie in the bill, provided the correct address, and asked the utility to correct it. The same day, Reed replied that she had updated the address.

Around 10:00 a.m. on November 15, 2022, the utility shut off water service to the mobile home park because Massie had not paid the outstanding balance. Within approximately three hours, Massie learned that the water had been shut off and paid the past due amounts in full. Reed acknowledged by an email at 1:12 p.m. on November 15, 2022, that full payment had been made. The utility restored water service to the park within an hour of the payment. In total, the water was turned off for approximately four hours.

The tenants filed claims seeking recovery of damages[2] under Code § 55.1-1243.1 of the Virginia Residential Landlord and Tenant Act ("VRLTA") for Massie's "willful" interruption of

---

[2] Pursuant to Code § 55.1-1243.1, which became effective on July 1, 2021, a tenant who prevails is entitled to "(i) the actual damages sustained by him; (ii) statutory damages of $5,000 or four months' rent, whichever is greater; and (iii) reasonable attorney fees."

- 3 -

their water service. The case proceeded to a bench trial in the circuit court. Several of the

tenants testified that their water had been shut off without warning on November 15, 2022, and

that the lack of water had obstructed them from performing certain housekeeping functions,

routine hygiene maintenance, and proper childcare. Campbell and Reed also testified, explaining

the efforts they had made to communicate with Massie about the outstanding bill. When the trial

judge asked whether Massie was informed that the water would be cut off on November 15 if it

failed to pay the bill before that date, Campbell admitted, "I don't think that was relayed to

anybody who may have been on that list that day."

Massie's Operations Manager, Deandre Singleton, acknowledged that the utility had sent

the bills to the email address Massie had listed in its application, and he did not deny that Massie

had received the emails. Singleton testified, however, that he did not personally receive the

emails and did not know whether anyone else in the company had received them. Singleton did

not explain why Massie did not respond to the bills and delinquency notice that the utility sent

before November 10. Nor did he explain why Massie failed to pay the bill between November

10 and November 15. But he testified that Massie never intended to interfere with the tenants'

water service. When asked whether Massie had "purposefully not pa[id] the bills so that they

would go into default to have the water cut off," Singleton replied, "No."

After taking the matter under advisement, the circuit court issued a letter opinion and

later entered judgment for Massie. Noting that the VRLTA does not define the term "willful"

and that no court had interpreted the word as it is used in Code § 55.1-1243.1, the circuit court

applied the definition of "willful" the Supreme Court of Virginia enunciated in *Etherton v. Doe*,

268 Va. 209, 213-14 (2004) (addressing a claim of "willful and wanton negligence"). The circuit

court found there was "no dispute that despite verbal and email warnings from [the utility]

regarding the possibility of a water shut-off, [Massie] failed to pay the outstanding balance until

approximately three hours after the [utility] followed through on its warnings of a water shut-off." But the court also found that the tenants presented no evidence that Massie "intentionally or maliciously acted to discontinue [their] utility service." Thus, the circuit court concluded that Massie merely "acted negligently in its failure to timely pay the utility invoices related to its recently acquired mobile home property." The circuit court held that Massie's actions did "not rise to the level of willfulness envisioned by [Code § 55.1-1243.1]." Accordingly, it dismissed the actions with prejudice.

On appeal, the tenants argue that the circuit court identified the correct legal standard—"willful"—but erroneously applied the standard by imposing an intentionality requirement to Massie's conduct, and by concluding that Massie's interruption of their water services was merely negligent.

ANALYSIS

When a circuit court decides a case without a jury, the judgment "will be set aside only if 'it appears from the evidence that such judgment is plainly wrong or without evidence to support it.'" *Callison v. Glick*, 297 Va. 275, 287 (2019) (quoting Code § 8.01-680). In such a case, we "review all factual findings in the light most favorable to the prevailing part[y] below," but "[t]he circuit court's application of law to facts . . . is reviewed de novo." *Id.* at 287-88. Additionally, "[w]hether a lower court has correctly defined and applied a legal standard is a question of law reviewed de novo," *Alexandria City Pub. Schs. v. Handel*, 299 Va. 191, 196 (2020), as are "issues of statutory interpretation," *Taylor v. Commonwealth*, 77 Va. App. 149, 162 (2023).

Code § 55.1-1243.1 provides a right of action by which a tenant "shall recover" damages from his landlord upon presenting "evidence establishing that his landlord has willfully and without authority from the court . . . interrupted or caused the interruption of an essential service to the tenant." Essential services under the VRLTA include "heat, running water, hot water,

- 5 -

electricity, and gas." Code § 55.1-1200. Massie concedes that its failure to pay the water bill caused the four-hour interruption of water service to the tenants. Thus, the only issue is whether the circuit court correctly concluded that Massie did not "willfully" cause the interruption. As noted, the VRLTA does not define the word "willfully" for determining liability under Code § 55.1-1243.1, and neither our Supreme Court nor this Court has previously construed this statutory term in the context in which it is used here.

When construing a statute, "our primary objective is to ascertain and give effect to the legislative intent, which 'is initially found in the words of the statute itself.'" *Chaffins v. Atl. Coast Pipeline, LLC*, 293 Va. 564, 568 (2017) (quoting *Crown Cent. Petroleum Corp. v. Hill*, 254 Va. 88, 91 (1997)). "When, as here, a statute contains no express definition of a term, the general rule of statutory construction is to infer the legislature's intent from the plain meaning of the language used." *Matzuk v. Price*, 70 Va. App. 474, 483 (2019) (quoting *Jones v. Commonwealth ex rel. Moll*, 295 Va. 497, 504 (2018)). To find the ordinary and plain meaning of a word, "courts can look to dictionary definitions," *Davenport v. Util. Trailer Mfg.*, 74 Va. App. 181, 196 (2022); *Tomlin v. Commonwealth*, 302 Va. 356, 372 (2023) ("To discover the plain and ordinary meaning of everyday language, we consult general-purpose dictionaries."), or "pertinent analysis in prior case[s]," *Eley v. Commonwealth*, 70 Va. App. 158, 165 (2019).

The plain, ordinary, and everyday meaning of "willful" is "done deliberately: not accidental or without purpose: INTENTIONAL." *Willful*, *Webster's Third New International Dictionary* (1981). *See also Merriam-Webster Online Dictionary*, https://www.merriam-webster.com/dictionary/willful (last visited Aug. 2, 2024) ("done deliberately: INTENTIONAL"). This definition is also consistent with the construction of the term as it has been used in other statutory contexts. Generally, "[c]onduct is 'willful' when it is intentional." *Suffolk City Sch. Bd. v. Wahlstrom*, 302 Va. 188, 223 (2023) (quoting *RF & P*

- 6 -

*Corp. v. Little*, 247 Va. 309, 320 (1994)).  The word "willful" denotes "an act which is intentional, knowing, or voluntary."  *Angstadt v. Atl. Mut. Ins. Co.*, 254 Va. 286, 293 (1997) (analyzing the word "willful" in an insurance contract provision requiring insured to cooperate with its insurer).

Our Supreme Court has further explained that the word "intentional" as it pertains to "willful" action applies differently in civil statutes than it does in criminal statutes.  "Intent in a civil context only requires that a person intended his actions; there is no requirement that the person have knowledge that his actions were wrongful."  *Osman v. Osman*, 285 Va. 384, 391 (2013).  "Civil use of the term [willful], . . . typically presents neither the textual nor the substantive reasons for pegging the threshold of liability at knowledge of wrongdoing."  *Id.* (first alteration in original) (quoting *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 57 n.9 (2007)); *see Suffolk City Sch. Bd.*, 302 Va. at 223 (analyzing whether public officials "willfully" and "knowingly" violated the Virginia Freedom of Information Act because Code § 2.2-3714(A) required that a violation be both "willfully *and* knowingly made" (emphasis added)).

Furthermore, when deciding whether an actor's conduct is "willful" in civil contexts courts consistently conclude that "[i]ll will is not a necessary element."  *Benedict-Miller v. Va. Dep't of Soc. Servs.*, 73 Va. App. 679, 694 (2021) (quoting *Infant C. v. Boy Scouts of Am.*, 239 Va. 572, 581 (1990)) (analyzing whether a teacher had committed "willful misconduct" under Code § 63.2-1511(C), which imposes liability on school personnel for abuse or neglect of children); *e.g.*, *Curtis v. Highfill*, 298 Va. 499, 506 (2020) ("'Ill will is not a necessary element' of willful and wanton conduct." (quoting *Infant C.*, 239 Va. at 581)); *see also Dep't of Prof. & Occupational Regulation v. Abateco Services, Inc.*, 33 Va. App. 473, 476, 479-81 (2000) (holding, with respect to an employer's violation of a safety or health provision of Title 40.1, "[a]n employer's good faith belief is irrelevant to the question of whether an employer 'willfully'

- 7 -

violated the law"), *aff'd upon rehearing en banc*, 35 Va. App. 644 (2001). Rather, the plaintiff need only show that "[the actor] was conscious of his conduct, and conscious, from his knowledge of existing conditions, that injury would likely or probably result from his conduct."[3] *Benedict-Miller*, 73 Va. App. at 693 (alteration in original) (quoting *Thomas v. Snow*, 162 Va. 654, 660 (1934)).

Consistent with these principles, courts determining willfulness in the civil context distinguish between the actor's intent concerning his actions and his intent concerning the *result* of his actions. Only the former intent is necessary to find the conduct willful. *See Infant C.*, 239 Va. at 582 ("An actor guilty of willful and wanton conduct intends his act, but not the resulting harm."). An actor's conduct may be willful "'even though he hopes or even expects that his conduct will prove harmless,'" if he "'realizes or, from facts which he knows, should realize that there is a strong probability that harm may result' from his actions." *Benedict-Miller*, 73 Va. App. at 694 (quoting *Infant C.*, 239 Va. at 582-83).

Against this backdrop, we conclude that to establish that the landlord "willfully . . . interrupted or caused the interruption of an essential service to the tenant," the tenant must show that the landlord intentionally committed an act or omission that the landlord knew or should have known from the circumstances had a "strong probability" of interrupting or causing the interruption of an essential service to the tenant. Code § 55.1-1243.1; *see Benedict-Miller*, 73 Va. App. at 694 (quoting *Infant C.*, 239 Va. at 583). "Ill will is not a necessary element" of liability under Code § 55.1-1243.1, so the tenant need not show that the landlord specifically intended to interrupt the essential service. *Benedict-Miller*, 73 Va. App. at 694 (quoting *Infant*

---

[3] By contrast, "when used in a *criminal statute* [willful] generally means an act done with a bad purpose; without justifiable excuse; stubbornly, obstinately, perversely." *Lambert v. Commonwealth*, 6 Va. App. 360, 363 (1988) (emphasis added) (quoting *United States v. Murdock*, 290 U.S. 389, 394 (1933)).

*C.*, 239 Va. at 581). However, the tenant *must* adduce evidence that the act or omission that caused the interruption was intentional rather than merely inadvertent or negligent. *Cf.* Code § 55.1-1239 (providing remedies to a tenant where "the landlord willfully *or negligently*" fails to supply an essential service (emphasis added)).

In this case, the tenants first argue that the circuit court misapplied the legal standard by improperly requiring them to prove that Massie intended to interrupt their services. We do not agree that the circuit court did so. The tenants appear to assume that because the circuit court noted in its letter opinion that it "did not hear any evidence that [Massie] intentionally or maliciously acted to discontinue [the tenants]' utility service," the circuit court based its decision solely on that finding. Of course, neither the text of the statute nor the ordinarily understood definition of "willful" requires malice as a component, and if the circuit court had based its decision *solely* on the lack of malice, it would have erred in doing so. However, it is clear from its context that the circuit court's statement was in the nature of a simple observation in its broader analysis of all the evidence and the circuit court expressly considered the entire body of evidence and made additional factual findings; including that Massie paid the bill immediately upon learning the water had been cut off. The circuit court clearly did not end its analysis of "willfulness" upon finding that Massie did not maliciously interrupt the water service, and the totality of the record makes it clear the circuit court did not rest its judgment solely on that finding. "[W]e will not fix upon isolated statements of the trial judge taken out of the full context in which they were made and use them as a predicate for holding the law has been misapplied." *Yarborough v. Commonwealth*, 217 Va. 971, 978 (1977). Thus, we disagree with the tenants that the circuit court misapplied the legal standard it had correctly identified.

The tenants further argue that the circuit court erred because the evidence was sufficient to support a finding of willfulness. Reviewing the facts in the light most favorable to Massie, we

cannot conclude that the circuit court's judgment was "plainly wrong or without evidence to support it.'" *Callison*, 297 Va. at 287 (quoting Code § 8.01-680); *RF & P Corp.*, 247 Va. at 318.

Clearly there is "no dispute that despite verbal and email warnings from [the utility] regarding the possibility of a water shut-off, [Massie] failed to pay the outstanding balance until" the water was finally shut off. Yet the tenants produced little evidence explaining *why* Massie failed to pay the bill. Despite having the burden of proof to establish Massie's intent, the tenants asked both the circuit court and this Court to speculate that because Massie knew about the water bill, its failure to pay it must have been deliberate. Other than noting the uncontested failure to pay the bill, they point to no evidence supporting such an inference. A rational fact finder could just as reasonably attribute the failure to inadvertence, or even incompetence, which as noted above, is not sufficient without more to establish "willfulness."

The only Massie employee who testified—Singleton—stated that he was unaware of the email notices and did not know if anyone else at the company received them. No evidence established who at the company was responsible for monitoring the email account, who was responsible for paying bills, who knew or should have known about the bills, and what actions were or were not taken internally to pay the outstanding balance. The circuit court was left to guess about who or what caused the failure to pay the water bills. Considering that Massie paid the bill within hours of learning the water had been shut off, the circuit court could reasonably conclude as it apparently did, that the failure to pay the water bill was the result of miscommunication or negligence, rather than an intentional act or omission.

Even if we were to indulge in the speculation urged by the tenants by assuming Massie's failure to pay was intentional, the evidence in the record does not clearly establish that Massie knew or should have known that not paying the bill would likely result in the utility cutting off the water on November 15. The September 15 invoice listed a cut-off date of November 5, the

October 15 invoice listed a cut-off date of December 5, while the October 20 delinquency notice listed a cut-off date of November 7. Confusingly, the delinquency notices did not explain the discrepancies, and in any event, the utility did not cut the water off on any of the dates specified in any of its bills or other correspondence.

Furthermore, on November 10, when Reed and Greenberg spoke on the phone, the two cut-off dates the utility had listed in its notices to Massie had passed without the utility cutting off the water, yet Reed did not alert Greenberg that there was a new cut-off date. The utility may have decided internally that the cut-off date would be November 15, but there is no evidence that the utility provided Massie with that information. After months without communication, the parties were apparently in the process of resolving the issue when the utility cut off the water less than a week after the November 10 phone call. While it would not have relieved them of their contractual obligation, Massie employees might reasonably have expected to have more time to pay the outstanding bill, given the utility's lack of enforcement and the nature of the phone call and emails exchanged between Reed and Greenberg. Given the record before us, we cannot say it would be plainly wrong for the circuit court to conclude that Massie employees could reasonably have doubted the existence of a strong probability that the water would be cut off on November 15.

"A trial court's judgment is presumed to be correct, and on appeal, we must view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the prevailing party at trial." *Evaluation Research Corp. v. Alequin*, 247 Va. 143, 147 (1994). Based on the record before us, we hold that the circuit court was not plainly wrong in concluding

that the tenants failed to prove by a preponderance of the evidence that Massie willfully caused the interruption in water service. *Callison*, 297 Va. at 287 (quoting Code § 8.01-680).[4]

Therefore, we affirm the circuit court's judgment.

*Affirmed.*

---

[4] We do not foreclose the possibility that failure to pay a bill for an essential service could constitute a willful interruption of that service in certain circumstances. But given the sparse evidentiary record concerning the circumstances of Massie's failure to pay the bill, the circuit court's conclusion that the tenants failed to prove that the interruption of the tenants' water service was willful was not "plainly wrong." *Callison*, 297 Va. at 287 (quoting Code § 8.01-680).